JOHN E. LINSTER v. ALFRED W. LUECKE AND OTHERS.[1]

June 24, 1932.

No. 28,999.

[1]Reported in 243 N. W. 395.

*Thomas H. Quinn,* County Attorney, and *John W. LeCrone,* Assistant County Attorney, for appellants.

*A. B. Childress,* for respondent.

HOLT, J.

Defendants, the auditor and board of county commissioners of Rice county, appeal from the judgment enjoining the letting of a contract to raze the walls of the courthouse, destroyed by fire, and to erect a new fireproof structure upon the site of the one destroyed.

In Faribault, the county seat of Rice county, a brick and stone courthouse was built in 1874. It was not fireproof. In 1924 there were added to the east and west sides fireproof additions or wings, each about 18 feet wide inside measure, two stories and basement, and of fireproof construction, to serve as vaults for records. These additions were built to harmonize with the architecture of the existing courthouse, the ceilings being 16 feet high. Fire destroyed the courthouse on February 25, 1931, the building being completely

gutted except the fireproof wings. There was insurance, and the loss was adjusted at $62,000 on the building and $11,000 on the contents. The total amount so adjusted and collected was set aside by the county board for replacing the courthouse. The problem confronting the board was whether to restore the building to what it was before the fire or to erect a courthouse of modern type and fireproof. The only thing of some conceded value now remaining of the old structure which could be made use of in the restoration thereof would be the two wings, and for such purpose their value was found to be $10,000. It is in dispute whether any part of the walls or foundation of the building erected in 1874 could be utilized.

The county board sought and obtained expert advice on whether to restore or to rebuild upon a modern plan. To make use of what remains would require reproducing the courthouse of 1874, for the wings would determine the height of ceilings and style of architecture. The cost of restoration was estimated at from $51,000 to $85,000. After what appears to be an honest and painstaking study and investigation, four of the five county commissioners came to the conclusion that the interests of the county would be better served by razing the old building and erecting a modern courthouse than by restoring the old. To that end an architect was employed, who prepared plans and specifications. It was estimated that the building thus planned could be completed for $181,000, including a heating plant costing $20,000. Besides the $73,000 on hand, the board deemed $129,000 more was needed, and submitted a proposition to issue bonds for that amount to the electors. Only about one-third of the electors voted, and the proposition was defeated, there being 1,807 votes cast for the issuance of bonds and 2,316 votes against. Notwithstanding this, the board by a vote of four to one decided to raze what remained of the courthouse and to proceed to erect a new one according to the plans prepared by the architect employed. Bids to raze the old courthouse were called for and received. The board could have done this work for about $4,000; but before the contract could be awarded this action was brought and tried, resulting in a judgment permanently enjoining

the board from wrecking, razing, or destroying the wings mentioned and from erecting the proposed new courthouse pursuant to the plans and specifications mentioned.

From the memoranda of the learned trial court, made a part of the findings and of the order denying the motion for amended findings, it is plain that the court recognized that it was for the board and not for the court to decide whether the destroyed building should be restored or a new building erected. The old courthouse being destroyed, it was the duty of the board to provide such a building as it considered suitable for courthouse purposes. The court may not make a decision for the board nor interfere therewith unless it is established that the board acted arbitrarily, or unreasonably, or corruptly, or against the best interests of the public, or without authority of law. Pertinent statutes read:

"Each county shall provide at the county seat, and keep in good repair, a suitable courthouse, supplied with fireproof vaults, a suitable and sufficient jail, and other necessary buildings." G. S. 1923 (1 Mason, 1927) § 643.

In performing this duty the county acts by or through its board of commissioners. Curtis v. County of Lincoln, 136 Minn. 25, 161 N. W. 210. And G. S. 1923 (1 Mason, 1927) § 668, provides:

"The county board of each county shall have power to erect, furnish, and maintain a suitable courthouse and jail, but no indebtedness shall be created for such purpose in excess of five mills on each dollar of assessed valuation."

It was held in Wall v. County of St. Louis, 105 Minn. 403, 117 N. W. 611, that where the county has a usable courthouse the board may determine that it is not suitable and erect one that it deems suitable if funds therefor can be provided. The county board, on a proposition like the one here in question, acts in a legislative and administrative capacity; hence if its action is assailed in court, the court may neither determine the matter anew nor review the decision of the board as if on appeal. The court may disturb the action of the board only if it be proved that the board acted

arbitrarily, unreasonably, corruptly, or upon wrong theory of the law. Whether it was wiser, all things considered, to restore the old courthouse or to raze the remains and erect a new one as determined, is no concern of the court. The law leaves that to the judgment of the board. This is clearly and sufficiently demonstrated in Brazil v. County of Sibley, 139 Minn. 458, 166 N. W. 1077, and the cases therein referred to. A later case is Packard v. County of Otter Tail, 174 Minn. 347, 219 N. W. 289.

The assignments of error challenge certain findings as unsupported. But two need be considered. One of the main attacks is upon that part of the findings which, after stating that it was the intention of the board to raze the old courthouse, finds that its intention was "to enter into a contract for the construction of a new courthouse pursuant to the plans and specifications prepared by said architect." If the quoted words mean that the board intends to enter a contract for the construction and completion of a new courthouse, the evidence does not sustain such finding. But the finding does not say that the board intended to contract for the completion of the building; and, interpreting it in the light of the court's memoranda and the evidence, we construe the finding to mean that the board intends to enter contracts for the erection• of the outside walls, put on the roof, insert windows, and finish, in the lower floor or basement, adequate quarters for four of the principal county officers. The board estimated that this could be done with the funds on hand. The testimony of all the county commissioners in favor of the erection of a new building was to contract for no more of the construction than the funds in sight would pay for. The board considered that from the standpoint of economy there was so much of a saving in the heating and upkeep of a courthouse, newly constructed on modern plans, as to make it prudent and advisable not to attempt to restore the old. By the plan intended to be pursued the building could at once be so far completed as to be in part used for the safe-keeping of the records and for quarters for some of the county officers; and by degrees, as money became available, the rest of the interior work could be

done so as to have a fully completed modern courthouse. No doubt the board also hoped that the voters at some near future time might see the advantage of voting bonds for the immediate completion of the courthouse. As long as the board for the available funds expended in the building project obtains immediate use for county purposes of part of the structure, its action cannot be held arbitrary or unreasonable or against public interest. There was testimony from others than the members of the board that the plan intended was wise and economical from a business view. Plaintiff argues that because the board has bound the county to pay the architect employed on the basis of a completed building, therefore it is the intention of the board to enter contracts for the full construction of the courthouse. In the nature of things the architect had to complete the plans and specifications so that the board could visualize the building and obtain proper estimates of the cost of its construction, even if the intention was not immediately to complete it.

The other important and controlling finding attacked as unsupported is the one that the board, "in attempting to wreck and raze said old structure and to erect a new courthouse in its place according to such plans and specifications without sufficient available funds with which to finish or build said new courthouse so as to make it a suitable courthouse as required by law, are acting arbitrarily and without authority of law."

The assessed value of the taxable property in the county is in round numbers $18,000,000, and the total indebtedness $1,172,668. The county is well within the debt limit fixed by 1 Mason, 1927, § 1938-4. It is true that not much may at present be expected from the five-mill tax for building purposes after the current expenses are paid therefrom. But the evidence is rather conclusive that from the insurance money the new courthouse as planned, with a temporary heating plant, may be fully completed as far as the exterior goes and suitable quarters finished for the four most important county officers. The estimates for so far completing the building were from $62,000 to $72,000. There is much persuasive evidence in this record from builders and structural engineers that it

is economically unwise to restore the old courthouse. The west wing is two inches out of plumb. Whether this came through the results of the fire or previous settling because of insufficient footings is uncertain. The foundation walls are cracked in different places. One expert testified this to be so in respect to the wing foundations also. It is true, one expert thought there could be restoration for $51,000, but others placed it as high as $85,000. All admitted estimates on restoration to be more unreliable and uncertain than on the building of a new structure. In this situation, we think the court had no real basis for finding that the determination of the board to raze the old structure and rebuild as planned was arbitrary or unreasonable or without authority of law. Whether to restore or to rebuild was a question for the board and is not for the court. The fact that 2,316 voters refused to bond the county to complete the building is to be considered, but is of no great significance when we note that 1,807 voters cast their ballots in favor of bonds and that 5,626 voters at the last general election did not see fit to go to the polls and vote on the proposition. The fact that funds were not immediately available fully to complete the courthouse cannot brand as contrary to law the determination of the board to build as planned for the money at hand, for its decision is supported by Rogers v. Le Sueur County, 57 Minn. 434, 59 N. W. 488. We think it clear from this record that the board did not, in going on with the building of the courthouse, intend to incur any debt or contract for such construction beyond the funds available for that purpose. Hence the board's action and intention does not run counter to the statutes or the law as declared in Johnston v. Board of Co. Commrs. 27 Minn. 64, 6 N. W. 411; Johnson v. Board of Co. Commrs. 93 Minn. 290, 101 N. W. 180. In our opinion, the finding that the board in what it has done and proposes doing in the erection of a new courthouse has acted arbitrarily and without authority of law is not sustained by the evidence.

The judgment is reversed.