# KENNETH P. GRISWOLD AND ANOTHER v. COUNTY OF RAMSEY AND OTHERS.[1]

July 23, 1954.

No. 36,337.

---

[1]Reported in 65 N. W. (2d) 647.

530

*James F. Lynch,* County Attorney, and *Robert G. Flynn* and *Frederick O. Arneson,* Assistant County Attorneys, for appellants Ramsey county, Tony Schmidt, George Moeller, Robert Gibbons, and Richard Jansen.

*Briggs, Gilbert, Morton, Kyle & Macartney, Frank J. Hammond,* and *Jack C. Foote,* for appellants Hagstrom Construction Company and Healy Plumbing and Heating Company.

*O. H. Godfrey, Jr.,* for respondent Kenneth P. Griswold.

*Roland J. Faricy, Richard A. Moore,* and *B. Warren Hart,* for respondent Alois C. Kennedy.

MATSON, JUSTICE.

Several of the defendants appeal from a summary judgment for the plaintiffs permanently enjoining the defendants from proceeding with the construction of a new jail.

The county board of Ramsey county in November 1952, as part of the 1953 budget, appropriated the sum of $600,000 for the building of a new county jail. Bids were advertised for on the basis of prepared plans and specifications. On August 3, 1953, when all bids were opened, it was discovered that even the lowest bid was considerably in excess of the $600,000 available for the construction of the jail. Consequently all bids were rejected.

A new request for bids was then submitted in which each bidder was asked to state his basic bid and also to indicate to what extent the basic bid would be reduced in the event the county board decided to eliminate certain construction work, such as the finishing of the fourth floor and construction of a tunnel to the courthouse, and further, if the board substituted certain cheaper building materials and equipment or made certain changes in structural design. In addition to these alternative bids directed to a decrease in cost, each bidder was also asked to indicate in what amount the basic bid would be increased if certain alternative items of a more expensive nature were substituted or added. These alternative proposals, by way of either deductions or additions to the basic bid, are for convenience referred to herein as the alternatives.

The request for bids contained the following significant provision:

"The Owner also reserves the right to accept or reject any of the alternate proposals *within six (6) months* as outlined in the specifications and as shown on the plans, *from the date of the award of the contract,* at prices quoted and shown on this proposal form." (Italics supplied.)

The purpose of the foregoing provision was to enable the county board to bring the construction cost of the jail for the time being within the amount of the funds available. In other words the alternative bids would enable the county board to proceed with the construction of a part of the jail and to complete it later when funds became available.

When the new bids for the general construction, plumbing and heating, electrical, and other work were received on October 5, 1953, *several of the alternative deductions were subtracted from the basic*

*bid in order to arrive at contract figures which did not exceed the money available.* The low bidders were determined by first deducting from the basic bids the alternative deductions whereby certain parts of the building were eliminated from the contract. On October 26, 1953, contracts were awarded to defendants Hagstrom Construction Company, Commonwealth Electric Company, and Healy Plumbing and Heating Company in the sum total of $573,370.

By the six-month-delayed-action provision above quoted, the board could within six months after the award require the successful bidders to complete the alternative items which had been deducted at the prices each successful bidder had quoted. It is undisputed that this delayed action provision or option for finishing and other work was formulated in anticipation of a future appropriation to the jail fund within six months which would permit the board to contract for such remaining work. On November 16, 1953, the budget for 1954 was approved and it contained an additional $210,000 appropriation for the building of the jail.

At this same meeting, apparently to forestall the effect of this suit commenced on November 4, 1953, by the plaintiff Kenneth P. Griswold, a taxpayer, to declare the contracts entered into void and to permanently enjoin the defendant county and contractors from proceeding with the work, the board took action to reject all the alternative bids which had been deducted from the successful basic bids. By this action the board abandoned any right or intention to require the successful bidders to complete the alternative items as provided for under the six months' provision above quoted. In short the board sought to defeat the purpose of the Griswold action by asking for new bids on the alternative items.

Another action was then commenced by plaintiff Alois D. Kennedy, another taxpayer, who was permitted to intervene. The defendant county then moved for summary judgment and such procedure was agreed to by all the parties. On December 28, 1953, the trial court ordered judgment in plaintiffs' favor permanently enjoining the defendants from proceeding with the construction of the jail as

provided for by the resolutions of the county board. This appeal is from the judgment entered thereon.

Although there is such a provision relating to contracts for the purchase of *goods, materials, or supplies,* no statutory provision applicable to Ramsey county requires the county board to advertise for bids and to let the contract to the lowest responsible bidder when contracting for the construction of a county jail or any other building. L. 1949, c. 180; M. S. A. 375.21, subd. 2. Without any apparent rational basis for making a distinction between the 85 smaller counties and the two larger ones, the legislature has expressly provided that no county with less than 75,000 population (§ 375.21, subd. 1) and no county with more than 75,000 and less than 225,000 population (§ 375.21, subd. 3) may make a contract for work or labor *or for the construction of buildings* without first advertising for bids and awarding the contract to the lowest responsible bidder. Section 375.21, subd. 2, however, which applies only to counties with a population of more than 225,000, expressly requires bids only for contracts for the purchase of *goods, materials, or supplies* and makes no mention whatever of contracts for the construction of buildings. This express omission is likewise true of L. 1949, c. 180, which applies to counties of more than 300,000 and less than 450,000 inhabitants and apparently was enacted to apply particularly to Ramsey county. L. 1951, c. 556, applicable to Hennepin county, similarly requires competitive bidding only for the purchase of goods, materials, supplies, and equipment and makes no mention of the construction of buildings. Ridiculous and unreasonable as it is today to permit any municipal body under ordinary conditions, and in the absence of any emergency, to construct large buildings without advertising for bids, the legislature has seen fit to exempt the two larger counties from such requirement. The language of both § 375.21, subd. 2, and L. 1949, c. 180, is plain in limiting the competitive-bid requirement to contracts for the purchase of *goods, materials, or supplies,* and such language does not by any reasonable standard of interpretation include contracts for *constructing* build-

534

ings.[2] The statute is restrictive and should not be extended beyond the language used in it. In Otter Tail Power Co. v. Village of Elbow Lake, 234 Minn. 419, 428, 49 N. W. (2d) 197, 203, 27 A. L. R. (2d) 906, a similar distinction was drawn as to the bidding statutes applicable to villages. There the words "supplies and equipment" were held not to cover contracts for work, labor, or services. The same distinction is applicable here. Where a statute speaks with clarity in limiting its application to specifically enumerated subjects its application may not be extended to other subjects by a process of construction since construction lies only in the domain of ambiguity.

 In the absence of a controlling constitutional, statutory, or charter provision, it is generally held that public policy does not demand that a municipal corporation about to enter into a contract for the construction of a public improvement must advertise for bids and let the contract to the lowest responsible bidder.[3] Subject to certain exceptions pertaining to personal services involving specialized knowledge and personal skill and to supplies of a peculiar character,[4] the public welfare is ordinarily best served, in the absence of emergencies, by letting construction contracts to the lowest qualified bidder whereby all competitive contractors are given an equal opportunity and the taxpayers are assured of the best bargain

[2]See, §§ 160.39 and 164.22 as amended by L. 1953, c. 45, § 1, involving contracts for the construction of roads and bridges.

[3]Starkey v. City of Minneapolis, 19 Minn. 166 (203); Elliot v. Minneapolis City, 59 Minn. 111, 60 N. W. 1081; Dalton v. Clarke, 18 Wash. (2d) 322, 329, 139 P. (2d) 291, 294; Reiter v. Chapman, 177 Wash. 392, 396, 31 P. (2d) 1005, 1007, 92 A. L. R. 828; 13 Dunnell, Dig. (3 ed.) § 6707; 43 Am. Jur., Public Works and Contracts, § 25; 63 C. J. S., Municipal Corporations, §§ 995, 996; 10 McQuillin, Municipal Corporations (3 ed.) § 29.31; Annotations, 26 L. R. A. 707 and 38 L.R.A.(N.S.) 659.

[4]As to contracts which depend for their value on specialized knowledge and personal skill or for supplies of a peculiar character involving the personal skill of the manufacturer, see 10 McQuillin, Municipal Corporations (3 ed.) §§ 29.35, 29.42, and 29.49; 63 C. J. S., Municipal Corporations, § 996b; 43 Am. Jur., Public Works and Contracts, § 28. As to contracts for utility services, see 43 Am. Jur., Public Works and Contracts, § 29. As to dispensing with bidding in time of emergency, see 43 Am. Jur., Public Works and Contracts, § 31; 10 McQuillin, Municipal Corporations (3 ed.) § 29.38.

for the least money.[5] Although, in the light of modern business practices, it is difficult to justify the conduct of officials who under ordinary circumstances let public construction contracts of any magnitude without first obtaining competitive bids, we cannot say, as a matter of law, that obtaining such bids is the only reasonable course to follow. The method or methods available to a municipality in the exercise of its discretionary powers are properly prescribed by the legislature. Irrespective of what lawful method is adopted or used in the letting of public contracts, it is for the courts to determine whether officials in the exercise of their discretion have applied the method used in an arbitrary, capricious, or unreasonable manner.[6]

■ Here the county board, although not required by statute to do so, commendably adopted the method of advertising for competitive bids as a preliminary to the letting of the contract for the construction of the jail. It follows however that, having once adopted the competitive bidding method, the county board was required, as long as that method had not been seasonably abandoned, to pursue such method in a manner reasonably designed to accomplish its normal purpose of giving all contractors an equal opportunity to bid and of assuring to the taxpayers the best bargain for the least money.[7] Clearly, whatever method is adopted in the letting of public contracts, such method may not, contrary to the public welfare, be pursued in an unreasonable, arbitrary, or capricious manner since the taxpayers are entitled to rely for their protection upon the safeguards which are inherent in whatever method is employed.

■ Generally it is presumed that public officials have entered into public contracts in good faith[8] and actual fraud in a particular

[5]Coller v. City of St. Paul, 223 Minn. 376, 387, 26 N. W. (2d) 835, 841; 43 Am. Jur., Public Works and Contracts, § 26.

[6]See, Brazil v. County of Sibley, 139 Minn. 458, 166 N. W. 1077, and cases cited therein; Linster v. Luecke, 186 Minn. 386, 243 N. W. 395.

[7]Coller v. City of St. Paul, 223 Minn. 376, 26 N. W. (2d) 835; Diamond v. City of Mankato, 89 Minn. 48, 93 N. W. 911, 61 L. R. A. 448.

[8]Reed v. City of Anoka, 85 Minn. 294, 301, 88 N. W. 981, 983; Bayne v. Board of Co. Commrs. 90 Minn. 1, 6, 95 N. W. 456, 457.

instance must be proved,[9] but this rule has no application in a determination of whether the requirements of competitive bidding have been met in the letting of a contract and, as a matter of sound public policy, such a contract is void, without any showing of actual fraud or an intent to commit fraud, if a procedure has been followed which emasculates the safeguards of competitive bidding.[10]

We need not here review all the essentials of competitive bidding since in the main they already have been set forth in recent cases.[11] It is enough to point out certain essential features. A fundamental purpose of competitive bidding is to deprive or limit the discretion of contract-making officials in the areas which are susceptible to such abuses as fraud, favoritism, improvidence, and extravagance. Any competitive bidding procedure which defeats this fundamental purpose, even though it be set forth in the initial proposal to all bidders, invalidates the construction contract although subsequent events establish, as in the instant case, that no actual fraud was present. It is for this reason that no material change may be made in any bid after the bids have been received and opened[12] since to permit such change would be to open the door to fraud and collusion. As a corollary thereto, and for the same reason, no material change in contract terms may be made after the contract has been let to the lowest bidder. Applying this to the instant case, the adoption of a procedure which permitted the county board, as long as six months after the opening of the bids and the letting of the basic contract, to change the contract materially by accepting an alternative proposal of the successful bidder opened the door to fraud in a manner which,

[9]Ambrozich v. City of Eveleth, 200 Minn. 473, 477, 274 N. W. 635, 637, 112 A. L. R. 269; Otter Tail Power Co. v. Village of Elbow Lake, 234 Minn. 419, 424, 49 N. W. (2d) 197, 201, 27 A. L. R. (2d) 906.

[10]Diamond v. City of Mankato, 89 Minn. 48, 53, 54, 93 N. W. 911, 913, 61 L. R. A. 448; Coller v. City of St. Paul, 223 Minn. 376, 389, 26 N. W. (2d) 835, 842.

[11]See, Coller v. City of St. Paul, *supra*, and Otter Tail Power Co. v. Village of Elbow Lake, *supra*.

[12]Coller v. City of St. Paul, *supra*.

if permitted, would emasculate the whole system of competitive bidding.[13]

The potential viciousness of the six-month-delayed-action clause is easily illustrated. The contracts were awarded to the low bidders to do all work except that specified in the alternative deductions. By another provision the county board reserved, however, a six-month option to require the successful bidders to do the work listed in the deductions at the prices they had bid. Under this system, bidder A who bid $100 to build a chicken house with windows and bid a deduction of $50 if windows were omitted, would be a lower bidder than B who bid $90 to build the chicken house with windows and bid a deduction of $30. If the option were later exercised, however, and A were required to put in the windows, the cost of the building would be $100, whereas B would have done it for $90 and would have been the low bidder. Under such a system a contractor who knows or is able to find out that one of the deduction alternatives is later to be accepted will be able to bid high on the whole project and high on the deduction, enabling him to become the lowest bidder; and yet, when the deduction alternative is later accepted, he will get paid his full original high bid, and the taxpayers of the county or municipality will find that the work has not been done by the lowest responsible bidder.

The delayed-action clause is contrary to public policy for the further reason that it practically neutralizes a most important deterrent to fraud and improvidence in the letting of public contracts; namely, timely preventive action by taxpayers who, in order to act effectively, must acquire a knowledge of the true facts before it is too late. If timely knowledge is to be acquired by interested taxpayers, clearly the construction contract must be let to the lowest responsible bidder upon such explicit and final terms as enables such taxpayers to ascertain, *as soon as the bids have been opened and the contract has been let*, the exact amount of the work to be performed under the contract and the total sum to be paid to the contractor

[13]See, Diamond v. City of Mankato, 89 Minn. 48, 53, 93 N. W. 911, 913, 61 L. R. A. 448; Coller v. City of St. Paul, 223 Minn. 376, 389, 26 N. W. (2d) 835, 842.

adjudged to be the lowest responsible bidder. When a county advertises for bids on a project and includes in the proposal certain alternatives, such alternatives must be accepted or rejected at the time of the award of the contract to the person *then* found to be the lowest responsible bidder. Delayed action in disposing of such alternatives deprives the public of a basis for making an exact comparison of bids until after the construction work has been partially completed and it is no longer practical to seek injunctive relief.

It is immaterial that subsequent action was taken by the county board here to reject all alternative bids as the validity of a competitive-bidding contract is to be determined as of the time such contract is awarded to the person adjudged to be the lowest responsible bidder. Although the evidence clearly indicates that no fraud was contemplated by the board, the contracts made with the lowest bidders must be held invalid because the bidding procedure adopted failed to meet the requirements of competitive bidding.

Since the contracts are invalid for the reasons above stated, it is unnecessary to consider whether a public building may validly be built in segments according to the amount of money available.[14]

The judgment of the trial court is affirmed.

Affirmed.

---

[14]With respect to this issue, see Linster v. Luecke, 186 Minn. 386, 390, 391, 243 N. W. 395, 397; State ex rel. Traeger v. Carleton, 242 Minn. 296, 64 N. W. (2d) 776; Yaryan v. City of Toledo, 8 Ohio Cir. Ct. (N. S.) 1, 25, affirmed, 76 Ohio St. 584, 81 N. E. 1199; Missouri Service Co. v. City of Stanberry, 341 Mo. 500, 515, 108 S. W. (2d) 25, 32; Joyce v. Falls City Artificial Stone Co. (Ky.) 64 S. W. 912; Ede v. Cogswell, 79 Cal. 278, 283, 21 P. 767, 768; Wright v. Forrestal, 65 Wis. 341, 354, 27 N. W. 52, 57; Annotation, 123 A. L. R. 577.