**MINERAL RESOURCE, TECHNOLOGIES, L.L.C., a Delaware limited liability company, Plaintiff,**

**Mineral Solutions, Inc., a Delaware corporation, Intervenor-Plaintiff,**

v.

**GRAND RIVER DAM AUTHORITY, a government agency of the State of Oklahoma, body politic and corporate, Defendant.**

No. 99–CV–501–H.

United States District Court,
N.D. Oklahoma.

Nov. 18, 1999.

Burck Bailey John Barnes Heatly, Sanford C. Coats, Fellers Snider Blankenship, Bailey & Tippens, Oklahoma City, OK, David J. Eiseman, Golenbock Eiseman Assor & Bell, New York City, for Plaintiff.

Mary Elizabeth Von Drehle, Allen B. Pease, Grand River Dam Authority, Vinita, OK, for Defendant.

Brian Stanley Gaskill, James Clay Lang, Patrick O. Waddel, Sneed Lang PC, Tulsa, OK, for Intervenor Plaintiff.

## ORDER

HOLMES, District Judge.

This matter comes before the Court on the complaint by Plaintiff Mineral Resource Technologies, L.L.C. ("MRT") for declaratory judgment (Docket # 1). MRT seeks a declaration by this Court that a contract extension that MRT purportedly entered into with Defendant Grand River Dam Authority ("GRDA") is valid and that the contract extension did not have to be competitively bid. MRT requested expedited consideration of its complaint.

At the initial hearing in this case on July 2, 1999, all parties agreed that the threshold question was whether applicable Oklahoma law required competitive bidding of the contract at issue. Accordingly, the Court ordered simultaneous briefing on this question. Thereafter, the Court held an evidentiary hearing on August 25 and 26, 1999. Based upon a review of the record and the applicable authorities, the Court finds that, as a matter of law, Defendant GRDA was under no legal obligation to put the subject contract out for competitive bidding.

I

For purposes of the legal question before the Court, the operative facts are not in dispute. The GRDA is a conservation and reclamation district created by the State of Oklahoma pursuant to Okla.Stat. tit. 82 § 861 *et seq.* The GRDA owns various electrical power generation facilities in northeast Oklahoma, including two coal fired generating units near Chouteau. The two units produce a by-product known as fly ash. On May 20, 1996, GRDA sent a letter to MRT, Intervenor–Plaintiff Mineral Solutions, Inc. ("MSI"), and several other companies soliciting sealed bid proposals for purchasing fly ash from GRDA's two units at Chouteau. MRT, MSI, and other parties submitted bids, but GRDA rejected them and elected to request rebidding. On June 19, 1996, GRDA issued another letter to interested companies soliciting new bids. That solicitation stated:

It is the GRDA's primary intent to dispose of as much fly ash from both units as possible without the necessity of having to store the fly ash on its own property. GRDA is desirous of developing new methods to sell an increased quantity of its Unit 2 fly ash and would invite prospective bidders to submit in their Proposals methodologies defined with sufficient specificity to quantify the amount of savings available to GRDA by the implementation of any suggested program and GRDA shall give additional consideration to any prospective bidder meeting the above stated criteria.

MRT, MSI, and at least one other company submitted bids, and GRDA selected MRT's bid. On July 17, 1996, MRT and GRDA entered into a Fly Ash Marketing Contract effective August 1, 1996 through July 31, 1999. The contract provided that "GRDA would also consider extending the Contract if such extension was commercially feasible for both parties." Complaint, Ex. 3 at p. 3.

During the performance of the contract, GRDA and MRT discussed extending the contract and having MRT construct a fly ash processing facility near the power plants. At a regular meeting on May 19, 1999, the GRDA board of directors passed a motion approving a seven year contract

extension. On June 15, 1999, MSI notified GRDA that it intended to file suit if GRDA extended the fly ash contract rather than putting it out for competitive bidding. Following this threat of litigation, the GRDA board, at a regular meeting on June 16, 1999, decided to forego extending the contract and instead to solicit bids. MRT filed the instant action on June 25, 1999, seeking declaratory relief.

## II

The fundamental question presented is whether the law requires GRDA to competitively bid its fly ash marketing contract after July 31, 1999. MSI contends that the applicable Oklahoma statutes, GRDA's own policies, and public policy implied in law each require competitive bidding. MRT asserts that neither the statute nor GRDA internal policies nor public policy implied in law compels a competitive bidding process for fly ash. These arguments will be considered in turn.

## A

Okla.Stat.Ann. tit. 82 § 874 (1990) provides general guidance on the requirements for sale of GRDA property. It states in relevant part:

> Nothing in Sections 861 through 890 of this title shall be construed as authorizing the district and it shall not be authorized to mortgage or otherwise encumber any of its property of any kind, real, personal, or mixed, or any interest therein.... Nothing in Sections 861 through 890 of this title shall be construed as authorizing the sale, lease or other disposition of any such property or interest of the district by the district ... of any of its properties ... provided, however, that the district may sell for cash, and subject to competitive bidding as provided by the Board, any such property or interest in the aggregate value not exceeding the sum of Five Hundred Thousand Dollars ($500,000) in any one (1) year.

The Oklahoma statutes also address GRDA property disposal in Okla.Stat.Ann. tit. 82 § 862 (1999 Supp.), which defines many of the powers of the GRDA. The GRDA may, "[s]ubject to the provisions of this act ... sell ... any property of any kind, real, personal or mixed ... which shall not be necessary to the carrying on of the business of the district." Okla.Stat. Ann. tit. 82 § 862(i).

It is clear that § 862(i) does not by itself contain a competitive bidding requirement. However, the provision states that it applies "[s]ubject to the provisions of [the] act." MSI argues that this references, *inter alia*, § 874, which requires competitive bidding in the sale of GRDA property. MSI's argument runs afoul of the basic canons of statutory construction. Section 874 authorizes the sale of not more than $500,000 worth of GRDA property, subject to competitive bidding, while § 862(i) specifically authorizes the sale of unnecessary property. If the provisions of § 874, including the requirement for competitive bidding and the limit on the value of property that can be sold in a year, govern the sale of unnecessary property, then § 862(i) becomes a nullity. The Court "will not assume that the legislature has done a vain or useless act; it must interpret legislation so as to give effect to every word and sentence, rather than rendering some provisions nugatory." *Anderson v. Eichner*, 890 P.2d 1329, 1339 n. 31 (Okla.1994). This principle of interpretation is embodied in the maxim *ut res magis valet quam pereat* ("that the thing may rather have effect than perish").

Furthermore, it is well settled that a specific statutory provision governs over a general one. *See, e.g., Taylor v. Special Indemnity Fund*, 804 P.2d 431, 432 ("The general rule [is] that a particular statute controls and acts as an exception to a general statute."); *Emerald Enterprises v. Oklahoma City*, 939 P.2d 27, 31 (1997) (finding specific powers granted to city governed over more general provision and allowed city to purchase land without com-

petitive bidding). Thus, the Court must construe the more specific provision, § 862(i), rather than the more general provision, § 874, as governing sales of unnecessary property.[1]

■ This raises the question of whether fly ash is property "not ... necessary to the carrying on of the business of the district." The Court concludes that fly ash is not "necessary" as that term is used in § 862(i). The dictionary defines necessary as "absolutely needed; required." Webster's Collegiate Dictionary (10th ed.1994). Fly ash is the by-product of the combustion of coal. Unlike power plant equipment or the coal itself, fly ash is not needed or required by GRDA to produce power or to meet GRDA's authorized purposes. Indeed, the fly ash is essentially of no use to GRDA. The fact that it has value via sale to another party does not make fly ash "necessary" to the business of the district. Rather, fly ash is a waste material that GRDA can now dispose of profitably. Since fly ash is not necessary to the business of GRDA, the sale of fly ash comes within the provisions of Okla.Stat.Ann. tit. 82 § 862(i). Accordingly, the Court finds that the controlling statute does not require GRDA to use competitive bidding to sell fly ash.[2]

## B

MSI further contends that GRDA maintains an internal policy of soliciting competitive bids for fly ash sales and that it was legally required to follow that policy at the expiration of the 1996 fly ash contract. As support for this contention, MSI points to GRDA's written purchasing policy, GRDA's practice of competitively bidding some prior fly ash contracts, and the GRDA board of directors' decision at the

June, 1999 meeting to put a new contract out for competitive bidding.

The GRDA purchasing policy, which requires competitive bidding, has little bearing on this matter. By its own terms, the policy applies specifically to *purchases* made by GRDA, and says nothing whatsoever about *sales* made by GRDA. Additionally, nothing in the policy could reasonably give rise to an inference that it applies to sales. Therefore, the Court finds that the purchasing policy is irrelevant to this case.

■ The record in this case contains no evidence that GRDA maintains an official policy on the sale of fly ash or other unnecessary property. The Court finds that choosing to competitively bid fly ash contracts on prior occasions does not establish an "official" policy sufficient to bind GRDA. Thus, the GRDA has no official policy to which it must be held.

MSI makes much of the GRDA board's statement that it would seek competitive bids for a new fly ash marketing contract to begin in August of 1999. The board made this decision, however, in the shadow of threatened litigation. The board's action hardly evidences a policy of competitive bidding. GRDA's counsel has stated, in fact, that the board took the position on competitive bidding simply to avoid being sued. Thus, these statements clearly do not constitute a binding GRDA policy. Accordingly, the Court finds that there is no internal GRDA policy that compels competitive bidding in this case.

## C

Finally, the Court finds that GRDA's history of putting prior fly ash marketing contracts up for competitive bidding does not, as a matter of public policy implied in law, compel it to competitively bid subse-

---

1. The fact that GRDA put the fly ash contract up for competitive bidding in 1996 does not affect this conclusion. GRDA's choice to seek competitive bidding has no bearing on whether Oklahoma statutes required it to do so.

2. Because the Court concludes that the Oklahoma statutes do not require competitive bidding for the fly ash marketing contract, it need not reach the question of whether such a contract falls within the competitive bidding law exception for contracts involving professional judgment or scientific knowledge.

quent fly ash contracts. MSI cites authorities in support of its contention that GRDA has an implied legal obligation, based on public policy, to continue to competitively bid all fly ash marketing contracts. The Court finds, however, that MSI's proffered authorities on this issue are inapposite.

MSI relies in part upon *Nachtigall v. New Jersey Turnpike Authority,* 302 N.J.Super. 123, 694 A.2d 1057 (1997). However, a close reading of that case reveals that it merely stands for the proposition that a company, "having undertaken an open bidding process, [is] required to do so fairly to the bidders; and [is] required to proceed without either the actuality or the appearance of fraud, corruption, favoritism or extravagance." *Id.* at 1064. *Nachtigall* involved a contract for an integrated electronic toll system for New Jersey toll roads. The losing contract bidder challenged its validity, claiming the state had conducted the bidding process in an unfair and prejudicial manner. *See id.* After noting that the state had an obligation to conduct the bidding and selection process in a fair and impartial manner, the court upheld the contract. Nothing in *Nachtigall* supports the proposition that once a public entity elects to put a contract up for competitive bidding, it must do so again when renewing the contract. Moreover, the other cases cited by MSI are similarly unpersuasive. *See American Totalisator Co. v. Seligman,* 489 Pa. 568, 414 A.2d 1037, 1040 n. 5 (1980) (holding state entity that acted as if it was soliciting competitive bidding on a contract must follow specified bidding procedures for that contract); *Waste Management Inc. v. Wisconsin Solid Waste Recycling Auth.,* 84 Wis.2d 462, 267 N.W.2d 659, 667 (1978) (holding that Wisconsin statute requires state entity to "award its contracts in accordance with the rules and procedures it sets forth"); *Griswold v. Ramsey County,* 242 Minn. 529, 65 N.W.2d 647, 652 (1954) (holding municipality that chose to put out a contract for competitive bid was bound to conduct bidding in a fair manner

that accomplished the competitive purposes of the process). None of these authorities support MSI's contention that GRDA, having elected to solicit competitive bids for fly ash marketing on four occasions in the past ten years, must as a matter of law seek competitive bids in the future.

For the reasons set forth above, the Court finds that GRDA is not bound by statute, its own policies, or public policy implied in law to put the subject fly ash marketing contract up for competitive bidding. The Court therefore grants Plaintiff MRT's request in its complaint for declaratory judgment on that issue.

The parties are hereby directed to contact Magistrate Judge Claire V. Eagan for a settlement conference to be scheduled at their earliest mutual convenience.

IT IS SO ORDERED.