GILDEA, Chief Justice
(dissenting).
I respectfully dissent. The majority determines that the proper standard of judicial review for a city’s “best value” bidding decision is the “arbitrary, capricious, or unreasonable” standard from Griswold v. Ramsey County, 242 Minn. 529, 535, 65 N.W.2d 647, 652 (1954). I do not disagree that Griswold provides the standard for judicial review. But applying that standard within the context of “best value” bidding requires particular care because of the subjective nature of the “best value” determination and the amount of discre *666 tion such a process vested in the City. See Banknote Corp. of Am. v. United States, 365 F.3d 1345, 1355 (Fed.Cir.2004) (“It is well-established that contracting officers have a great deal of discretion in making contract award decisions, particularly when, as here, the contract is to be awarded to the bidder or bidders that will provide the agency with the best value.”).
The Request for Proposals that the City issued made plain the subjective nature of the process. The City told prospective bidders that the City’s “primary desire ... for this procurement is to ensure an award will be made based on the highest quality of service that best matches the City’s requirements” and that the City would be “using the Federal Transit Administration’s ... approved Third Party Contracting Guidance ... ‘Best Value’ methodology.” Under this methodology, “best value” means that the contract will be awarded “based upon consideration of a combination of technical and price factors to determine (or derive) the offer deemed most advantageous and of the greatest value to the procuring agency.” Federal Transit Administration, Best Practices Procurement Manual 82 (2005), http:// www.fta.dot.gov/documents/BPPM full-textpdf.
Our court has not yet addressed how the arbitrary and capricious standard is to be applied in the context of best-value procurement. And, in my view, it is not necessary to define completely how the arbitrary and capricious standard is to be applied in every context of “best value” bidding. One example of where a court has' determined that the standard is met provides sufficient guidance for resolution of this case. See Heritage of Am., LLC v. United States, 77 Fed.Cl. 66 (2007). In that best-value case, the government solicited proposals for support services for a continuing education program. Id. at 68. The plaintiff, an unsuccessful bidder, received the best ratings in two of the criteria listed in the solicitation document, and its bid was the lowest in terms of price for two of the regions where the contract was to be awarded and was the second lowest in a third region. Id. at 69. The plaintiff sued, contending that the government’s decision to award the contract to another bidder was arbitrary and capricious. Id. at 69-70. The court agreed. Id. at 80.
The court described the plaintiffs burden as “heavy” and said that the court’s authority to set aside the award of a best-value contract was limited to situations where “(1) the procurement official’s decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.” Id. at 70-71. In the latter circumstance, the plaintiff had to show not only that there was a “violation of regulation or procedure,” but also that there was “a ‘clear and prejudicial violation of applicable statutes or regulations.’ ” Id. at 71 (quoting Kentron Haw., Ltd. v. Warner, 480 F.2d 1166, 1169 (D.C.Cir.1973)). To make the requisite showing of prejudice, the plaintiff had to demonstrate “that there was a substantial chance it would have received the contract award absent the challenged agency action.” Id. (citation omitted) (internal quotation marks omitted).
In Heritage, that standard was met. The court concluded that the government had wrongly determined that the plaintiffs bid was not compliant with the terms of the solicitation. Id. at 74. The court faulted the government for rejecting the plaintiffs bid for failing to comply with requirements that were not actually spelled out in the solicitation documents. Id. The violation was prejudicial because the plaintiff demonstrated that but for the government’s wrongful conclusion that the plaintiffs bid did not comply, the plaintiff *667 would have been within the “zone of consideration” for the award. Id. at 77. Specifically, the plaintiffs “adjectival ratings on technical capability and past performance were equal to [the successful bidder’s] and [the plaintiffs] price proposals were very close to” the price the successful bidder submitted. Id.
The record in this case stands in marked contrast to the record in Heritage. Specifically, it is undisputed that the City evaluated the bidders using the factors the City said it would use and there is no dispute as to what those factors meant. It is also undisputed that based on that evaluation, the successful bidder, First Transit, was ranked first.
In terms of price, which is arguably the only objective factor at issue in the process, First Transit’s price ($19,674,750) was the lowest of the four bidders, and First Transit’s price was almost $2 million less than RCL’s price ($21,613,100). The non-price evaluation factors were: technical proposals (which accounted for 40 percent of the non-price component of the score); past performance (which accounted for 20 percent of the non-price component of the score); financial ability (which accounted for 10 percent of the non-price component of the score); and interviews with key staff (which accounted for 30 percent of the non-price component of the score). There is no dispute that First Transit’s score was higher than RCL’s score on each one of the four non-price factors.[1] Indeed, First Transit was ranked first of the four bidders on the basis of the total evaluation of the non-price factors and it received over 400 more points than RCL.[2]
We have recognized that an “agency’s conclusions are not arbitrary and capricious so long as a ‘rational connection between the facts found and the choice made’ has been articulated.” ’ In re Excess Surplus Status of Blue Cross & Blue Shield of Minn., 624 N.W.2d 264, 277 (Minn.2001) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)); see also Antarctic Support Assocs. v. United States, 46 Fed.Cl. 145, 155 (2000) (noting that challengers “must do more than point out mere ‘mistakes’ or ‘missteps;’ they must ‘show that the claimed misstep was so excessive as to fall outside the decision-maker’s ambit of discretion.’ ” (citation omitted)). Given that it is undisputed that the City used the evaluation factors it said it would use and that First Transit received the highest ranking on both parts of that evaluation process (price and non-price factors), I would hold that the City’s determination that First Transit’s proposal represented the best value for the City is rationally connected to the facts and therefore is not arbitrary and capricious.
The majority goes a different route, applying our traditional summary judgment standard to remand the matter for trial. The majority concludes that there is a genuine issue as to whether the City was biased against RCL. The majority cites two facts to support its conclusion that the *668 City awarded the contract through an unfair and biased process. In my view, the facts on which the majority relies do not create an issue for trial when our standard of review is properly applied.[3]
The majority first cites the fact that First Transit’s bid listed two RCL employees as prospective managers that First Transit indicated it would hire if First Transit received the contract from the City. But when the City interviewed the bidders’ management teams, the City allowed First Transit to substitute these prospective managers with two of First Transit’s existing employees. The City then gave First Transit credit for the interview scores of the two RCL employees, even though RCL also got credit for these interviews because these employees were interviewed as part of RCL’s own bid proposal.
There is no dispute of fact over how the City handled or scored the interviews of the two RCL employees. The parties agree that First Transit was allowed to substitute others and that the City counted the interviews of the RCL employees twice, once for First Transit and once for RCL. Even though there is not a factual dispute on the issue, the majority still concludes that how the City scored the interviews supports reversal of summary judgment. The majority apparently concludes that the City’s double-counting amounts to a showing that the City improperly favored First Transit to the detriment of RCL.
But even if the City’s handling of the interviews supported the inference of bias, a trial is still not necessary in my view because RCL has not demonstrated that it was prejudiced. First Transit, despite any advantage it may have received, scored lower than another bidder, Veolia, on the interview factor. And perhaps even more importantly, RCL trailed all other bidders on the evaluation of the non-price factors in total, and on the interview category specifically.[4] That the City gave both First Transit and RCL credit for these interviews therefore is simply not material. O’Malley v. Ulland Bros., 549 N.W.2d 889, 892 (Minn.1996) (noting that to defeat summary judgment a fact must be “material” and to be material, the fact must “affect the outcome or result of a case”); see also Hawpe Constr., Inc. v. United States, 46 Fed.Cl. 571, 579 (2000) (concluding that the agency erred but affirming its decision because “to prevail in a protest the protester must show not only a significant error in the procurement process, but also that the error prejudiced it.” (citation omitted)). In my view, the district court accurately assessed this issue as “more molehill than mountain,” and correctly concluded that it would not have affected the outcome of the City’s bid selection.
The majority next relies on the fact that two City employees who were on the evaluation committee initially agreed to serve as references for RCL but then withdrew as references based on the advice of the City. The City employees did not inform RCL that they had withdrawn, which prevented RCL from finding replacement references and reduced the total number of points available to RCL in the past per *669 formance factor. Again, the parties do not dispute the facts on this issue.
As to this issue, the district court found that the omission of the City employee references negatively impacted RCL’s score. But, as the court determined, the City’s mishandling of the references does not support the conclusion that RCL is entitled to relief. This is so because even if RCL received a perfect score of 50 points from every evaluator on the past performance factor (an unlikely feat, given that no evaluator gave any bidder a score higher than 40), RCL’s total score would have only increased its overall ranking on the non-price factors from fourth place to third and RCL’s score would still have been almost 150 points below that received by First Transit. Therefore, even if RCL had provided additional references and those references were so positively received that RCL got a perfect score from the evaluators on the past performance factor, RCL still would not have demonstrated that it would have had a “substantial chance” at being awarded the contract. Heritage, 77 Fed Cl. at 71. In other words, this issue, like the issue discussed above, is simply not material to the outcome.
The majority faults the district court for drawing inferences 'against RCL and for ignoring contradictory evidence. But the majority does not identify any evidence which contradicts that discussed above. What the majority is really doing is highlighting conflicting inferences that may be drawn from undisputed evidence. In other words, even if the facts as to the-interview process and the references are undisputed, it is theoretically possible to conclude that those facts support the inference that the City was biased against RCL. But in the context of assessing whether a decision is arbitrary and capricious, we have recognized that “[wjhere' there is room for two opinions on the matter, such action is not ‘arbitrary and capricious,’ even though it may be believed that an erroneous conclusion has been reached.” Brown v. Wells, 288 Minn. 468, 472, 181 N.W.2d 708, 711 (1970). This is especially true when, as here, the losing bidder has not demonstrated that it suffered the requisite prejudice from the City’s missteps.
In my view, the district court appropriately reviewed the evidence in the record, determined that there were no disputed issues of material fact, and concluded that RCL had not demonstrated that the City’s decision should be set aside as arbitrary and capricious. It is frankly unclear what the district court should do differently on remand; the record is already developed, and there is no disputed evidence to weigh. The majority’s holding suggests that a trial will be necessary anytime a party presents a shred of evidence challenging an agency decision. But this is directly contrary to the deference called for by an arbitrary and capricious standard of review. See Leahy v. Raytheon Co., 815 F.3d 11, 17 (1st Cir.2002) (noting the “obvious diseongruence” between the arbitrary and capricious standard and the summary judgment standard); Preserve Endangered Areas of Cobb’s History, Inc. v. U.S. Army Corps of Eng’rs., 87 F.3d 1242, 1246 (11th Cir.1996) (“[E]ven in the context of summary judgment, an agency action is entitled to great deference.”). I would affirm the court of appeals and hold that the district court did not err.

. The scores were: Technical Proposals— First Transit 666.5, RCL 546; Past Performance — First Transit 289.5, RCL 103; Financial Ability — First Transit 200, RCL 100; and Interviews — First Transit 457, RCL 426. First Transit’s score was the highest on two of the four factors (technical proposals and past performance), tied for the highest score with two other bidders (Veolia and MV Transportation) on financial ability, and second (to Veo-lia) on the interview factor.

. First Transit received 1613 points and was ranked first; MV Transportation received 1478 points and was ranked second; Veolia received 1413 points and was ranked third; and RCL received 1175 points and was ranked fourth.

. The majority says that it does not mean to suggest that no other issues raised by RCL establish genuine issues of material fact for trial. But the majority does not identify any other facts that it contends are material and disputed, and therefore my response is necessarily limited to these two alleged factual disputes.

. Veolia got the most points on the interview factor (466), First Transit was second (457), MV Transportation was third (445), and RCL was last (426).