# HERBERT M. ASCH AND OTHERS v. HOUSING AND REDE-VELOPMENT AUTHORITY OF CITY OF ST. PAUL AND OTHERS. MILES LORD, ATTORNEY GENERAL, INTERVENOR.

97 N. W. (2d) 656.

June 26, 1959—No. 37,741.

*Roland J. Faricy, Richard A. Moore, B. Warren Hart, Faricy, Moore & Costello, James E. Kelley, James C. O'Neill,* and *Bundlie, Kelley & Maun,* for appellants.

*Harold L. Rutchick, Irving Shaw,* and *Louis P. Sheahan,* Corporation Counsel, for respondent Authority.

*O'Connor, Green & Thomas, Patrick J. O'Connor, Kenneth W. Green,* and *Frederick W. Thomas,* for respondent Sears, Roebuck & Company.

*Miles Lord,* Attorney General, and *Harold J. Soderberg,* Assistant Attorney General, for intervenor.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying plaintiffs' motion for amended findings or in the alternative for a new trial and from the judgment entered for defendants.

This action arises out of certain proceedings of the defendant Housing and Redevelopment Authority of City of St. Paul, herein referred to as the Authority, which resulted in the condemnation, clearance, and sale of certain land located in the Western Development Area to defendant Sears, Roebuck & Co., herein referred to as Sears.

Pursuant to the Municipal Housing and Redevelopment Act (M. S. A. 462.425), the Authority was given the right to exercise its powers under the act by a resolution passed by the St. Paul City Council subsequent to a public hearing held August 6, 1947. Under § 462.515 the Authority approved a redevelopment plan referred to hereafter as the '52 Plan. It involved two blighted areas of about 40 acres each, lying east and west of the State Capitol, known as the Eastern and Western Development Area. In accordance with § 462.521, the '52 Plan was adopted by the city council by resolution on March 6, 1952, after a public hearing. Notice of the hearing had been published on February 23 and March 1, 1952.

On January 28, 1953, certain amendments to the '52 Plan were approved by resolution of the Authority. The resolution containing the amendment was submitted to the St. Paul City Council and was approved by that body on March 10, 1953. That resolution stated that the "amendments and revisions constitute refinements and adjustments in the Redevelopment Plans for Projects UR Minn. 1-1 [Eastern Development Area] and UR 1-2 [Western Development Area] and do not include any substantial changes in the Redevelopment Plans as previously approved." It further stated that the "amendments and revisions do not change the general concept of the original Redevelopment Plans approved by this Council on March 6, 1952." The approval of the amendments in 1953 was not made pursuant to a published notice or a public hearing, which is explained hereinafter.

Eminent domain proceedings to acquire the property involved in the '52 Plan were commenced April 27, 1955, and the property was thereafter acquired. On March 6, 1957, the '52 Plan involving the

Western Development Area was revised by the Authority and the proposed revision sent to the City Planning Board of St. Paul for its approval. The City Planning Board on February 13, 1957, recommended unanimously that the revision be adopted by the city council and advised that the provisions of the plan were "consistent with the Central Area Redevelopment Plan as prepared by the City Planning Board in 1951 and as amended to date."

Pursuant to § 462.521, notice of a public hearing on the adoption of the revised plan by the city council was published March 15, 1957, and a public hearing was held March 27, 1957, at which time the revision dealing with the Western Redevelopment Area was approved by resolution of the city council as conforming to a Central Area Plan as prepared by the City Planning Board of St. Paul.

The Authority thereafter proceeded to dispose of the lands located in the area by invitation for bids; preliminary bids to be opened August 7, 1957, and final bids sometime thereafter. It also notified prospective bidders that pursuant to § 462.525 contracts for the sale of land could not be made until after a public hearing following published notice. The preliminary and final bids were received and notice of the public hearing was published on December 2, 1957. The hearing was held on December 12, 1957, prior to the approval of the final bids.

On December 16, 1957, the Authority established, pursuant to § 462.541, a fair use value of the tract involved here in the sum of $586,736, which was the amount bid by Sears. On the same day the Authority approved the sale to Sears in the same amount, which is 95¢ per square foot.

A pretrial conference was held subsequent to the commencement of a taxpayers suit to nullify the foregoing proceedings and to have the act declared unconstitutional. The conference began June 16 and terminated June 22, 1958. The matter proceeded to trial without a jury on September 8, 1958, and continued until September 25, 1958. During the extended period of the pretrial conference and the trial it appears from the record that the witnesses and documents involved were exhaustively examined.

The trial court found:

"Findings of Fact

"I.

"That pursuant to the statutes and laws of the State, the defendant Housing & Redevelopment Authority of the City of St. Paul, Minnesota, was duly created and organized, and that at all times herein referred to was duly qualified and acting as such.

"II.

"That pursuant to the statutes and laws of the State, proceedings were taken under which a redevelopment project was undertaken, and the lands in question and other lands were duly acquired by the defendant Housing Authority by purchase and eminent domain.

"That all of such proceedings of the defendant Housing Authority, City Council of the City of St. Paul, and the Planning Board of said City, were in all respects in accordance with the statutes and laws of the State applicable thereto, and were not arbitrary, capricious or unreasonable, or without evidence in support thereof.

"III.

"That the defendant Housing Authority duly proceeded with its plans to redevelop the area and the lands so acquired, and pursuant to the statutes and laws of this state to sell and dispose of the lands acquired for redevelopment purposes, and sold the land in question to the defendant Sears, Roebuck & Co.

"That all of the proceedings, including the sale to the defendant Sears, Roebuck & Co. were had, conducted and made in accordance with the provisions of the law applicable thereto, and the actions and proceedings of the defendant Housing Authority, the City Council and the Planning Board were not arbitrary, capricious or unreasonable, or without evidence in support thereof.

"Conclusions of Law

"As conclusions of law the Court finds that the defendants are entitled to the judgment of this Court dismissing the plaintiffs' action with prejudice and for their costs and disbursements herein.

"Let judgment be entered accordingly."

Plaintiffs cite some 19 objections in their brief but on oral argument stated that the case essentially presented 4 issues which we regard as follows:

(1) The constitutionality of the Municipal Housing and Redevelopment Act as it relates to the taking of private property for a public use, and whether the sale to private individuals constitutes a public use.

(2) Does L. 1959, c. 545, which amends the Municipal Housing and Redevelopment Act, affect this litigation?

(3) The legality of the procedures followed by the Authority in adopting redevelopment plans; amending previously adopted redevelopment plans; publishing notice prior to public hearings; conducting the hearing on December 12, 1957, for final approval of the sale to Sears; and failing to adopt valid use values as an aid in determining the price at which property was to be sold as required by the statute and whether the decisions of the Authority were arbitrary, capricious, and unreasonable.

(4) Once the Authority adopts a competitive bidding procedure accepting bids from prospective purchasers, must they fully comply with the customary competitive bidding procedures?

■ With respect to the first issue we are of the opinion that the recent case of Housing and Redevelopment Authority of St. Paul v. Greenman, 255 Minn. 396, 96 N. W. (2d) 673, is determinative. Clearly, according to the holding in that case the act is valid with respect to the authority granted by it to condemn property in blighted areas and resell the property to private individuals according to a redevelopment plan. As stated in the Greenman case, it is within the province of the legislature to declare a public use or purpose subject to a review by the courts, only to be overruled where the determination is manifestly arbitrary or unreasonable. The determination to sell to Sears is the exercise of that legislative function as delegated to the Authority. From the record here we cannot conclude that such determination was manifestly arbitrary or unreasonable.

■ Regarding the effect of the amendment to the Municipal Hous-

ing and Redevelopment Act, L. 1959, c. 545, we held in the recent case of Holen v. Metropolitan Airports Comm. 250 Minn. 130, 84 N. W. (2d) 282, that where an amendatory statute, which is clearly intended to be retroactive and applicable to pending litigation involving public rights, is enacted after judgment and pending appeal, the appellate court must dispose of the case in accordance with the law as changed by such amendatory enactment. We also held there that whatever the legislature may authorize in prospect it may adopt and validate in retrospect.

In the instant case it is apparent from L. 1959, c. 545, § 15, that the amendment should apply retroactively. In view of the provisions of the amendment it is controlling upon all but one of the objections raised under the third issue.

■ With reference to the objections raised under the third issue the plaintiff contends, among other things, that the redevelopment plan was not properly adopted at any time because under § 462.521, subd. 2, prior to adoption by the city council it would have to be found that the plan conformed "to a general plan for the development of the locality as a whole" and no "general plan" was ever created or adopted. It does appear from the record that no "general plan," formally designated, was in existence. However, a "central plan" was created by the City Planning Board and referred to in its resolutions synonymously with the term "general plan" as used in the resolution of the city council on March 6, 1952, which adopted the plan as being in conformance with the "general plan" of the locality.

Further, L. 1959, c. 545, § 2, clarifies the definition of "general plan" as used in § 462.521 to clearly include the "central plan" as adopted by the City Planning Board of St. Paul. Even in the absence of such clarification we are unable to conclude that the distinction in semantics between "central plan" and "general plan" subverted the intent of the legislature.

Plaintiffs also contend that the 1953 amendment and the 1957 revision of the '52 Plan are without force and effect; first because they interpret § 462.525, subd. 6, as precluding any modification of a redevelopment plan before the lease or sale of the project area or parts thereof; and since no sale or lease had been made subsequent to the

adoption of the '52 Plan the amendments or revisions were invalid. Also they contend that the 1953 amendment is invalid because no notice or public hearing was held prior to its adoption.

Without deciding whether plaintiffs' interpretation is correct, L. 1959, c. 545, § 9, cures the defect, if any, by amending § 462.525, subd. 6, to read as follows:

"A redevelopment plan may be modified at any time before or after the lease or sale of the project area or parts thereof, provided the modification shall be adopted by the authority and the governing body of the political subdivision in which the project is located, upon such notice and after such public hearing as is required for the original adoption of the redevelopment plan: Provided, however, that where the authority determines the necessity of changes in an approved redevelopment plan or approved modification thereof, which changes do not alter or affect the exterior boundaries, or do not substantially alter or affect the general land uses established in such plan, such changes shall not constitute a modification of the redevelopment plan nor require approval by the governing body of the political subdivision in which the project is located."

As to the lack of hearing with regard to the 1953 amendment, the necessity of such hearing is eliminated by the foregoing language where the amendment did not substantially alter or affect the general land uses established in the previous plan as was stated in the resolutions of the planning board and Authority. We find nothing in the record which would indicate that such a finding was capricious, unreasonable, or without evidentiary support.

Plaintiffs also object to the frequency of notice published prior to the required public hearings. Again L. 1959, c. 545, § 3, is conclusive as requiring only a single publication of notice prior to the hearing, which notice was given in all cases required by the Authority.

Another objection raised by plaintiffs, not corrected by the amendment, involves the validity of the hearing of December 12, 1957, relative to the proposed sale. It is contended to be invalid because § 462.525, subd. 2, provides for a "public hearing * * * by the authority upon the proposed lease or sale and the provisions thereof";

and because no contract was in existence whereby there could be a public hearing on the "provisions thereof." We are convinced by the language of § 462.525, following the above-quoted sentence, that it was not contemplated that the exact terms of the sale should necessarily be a subject of the public hearing—rather the express meaning is that the terms of the sale are to be fixed by the Authority, followed by a detailed description of those terms and guides as to their establishment. We are of the opinion that the requisite hearing is accomplished if the identity of the purchaser, the price to be paid, and the general plans are a matter of record, as they were here at the time of the hearing.

Plaintiffs also cite as an irregular procedure the failure of the Authority to adopt a use value as required by § 462.541. If, as advised by the law, it requests appraisals to be made it is expressly not bound to base its rentals or selling prices upon any such appraisals. Nor would it be bound by the use value once established since its only purpose is "as an aid" in determining rentals or sale prices. Further, the amendment under L. 1959, c. 545, eliminates any objections to the reestablishment of use values once determined by the Authority. Although the practice of establishing a use value in the same amount as the price for which the property is ultimately sold, as was done here, might be claimed to cast suspicion on the actions of the Authority, this is not sufficient to invalidate their actions because the law does not require them to follow the use value as determined.

The record indicates that appraisals were requested and that these appraisals ranged from $1.40 to $2.25 per square foot but the property was ultimately sold at $.95 per square foot. Granting a discrepancy between appraisals and the selling price, we cannot say that the decision to sell at that price was arbitrary, capricious, or unreasonable, where factors other than financial return had to be considered in selling the property, such as the assurance that the purchaser will comply with the plans or that the purchaser is financially capable of executing the plans to minimize the necessity of a resale of the property after partial completion.

■ Regarding the fourth issue, § 462.525 prescribes the method of disposing of property and subd. 2 thereof provides that a sale may be made "without public bidding." It is plaintiffs' contention that in

undertaking to accept competitive bids the Authority would be required to follow strictly, competitive bidding procedures. It cites Griswold v. County of Ramsey, 242 Minn. 529, 65 N. W. (2d) 647, in which we held that although a county board was not required by statute to adopt competitive bidding procedures in contracting for the construction of a jail, once having adopted the competitive bidding method, it was obligated to pursue such method in a manner reasonably designed to accomplish its normal purpose.

Under the facts and circumstances of the instant case we are of the opinion that this rule is not applicable where the municipal corporation is not buying goods or services under predetermined specifications, but where it is selling and is concerned with other factors in addition to monetary returns. We do not mean to preclude the requisite adherence to competitive bidding procedure in all cases where voluntarily assumed, and where the transaction involves a sale since it is conceivable that under some of these transactions the primary concern may be the amount of monetary return to the municipality.

The Authority here could have avoided any so-called competitive bidding procedures since under § 462.525 they are expressly allowed to dispose of property by lease or sale without public bidding.

To compel compliance with rigid competitive bidding procedures under such circumstances could conceivably require the Authority to dispose of property in a manner which would not be the wisest choice in fulfilling the discretion and responsibility delegated to it by the legislature.

■ One of the objections enumerated by plaintiffs and not incorporated into the four issues is that the findings are insufficient to determine the basis of the decision and therefore the trial court violated Rule 52.01 of Rules of Civil Procedure, which requires that "the court shall find the facts specially and state separately its conclusions of law thereon * * *." Clearly, findings by the trial court were mandatory. With reference to Rule 52(a) of Federal Rules of Civil Procedure, which is identical to the applicable provisions of Rule 52.01 of Minnesota Rules of Civil Procedure, it is stated that the purpose of the rule is to aid the appellate court by affording it a clear understanding of the ground or basis of the decision, and that the findings

of the trial court are not jurisdictional and the absence of findings may be disregarded by the appellate court if the record is so clear that the court does not need their aid. See, 2 Barron & Holtzoff, Federal Practice and Procedure (Rules ed.) §§ 1121, 1123.

We believe that the findings of the trial court are sufficient, in view of the completeness of the record here to reflect the basis of the trial court's decision, and further findings are not necessary as an aid to this court in rendering its opinion.

It is always possible that a proceeding of the type involved here—considering the length of time over which it was conducted; the number of government bodies concerned, namely, the St. Paul City Council, the City Planning Board of St. Paul, and the Authority; and the differences of opinion always present where policies are formulated pursuant to the delegation of legislative functions—may be subject to attack or criticism due to the complicated nature of the proceedings. However, it is our opinion that the issues raised by the plaintiffs which merit discussion are disposed of by the foregoing reasoning and that the decision of the trial court should be affirmed.

Affirmed.

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.