**NORTHWEST PETROLEUM ASSOCIATION, Respondent,**

v.

**MINNESOTA DEPARTMENT OF ECONOMIC SECURITY, Respondent,**

**Duluth Community Action Program, Inc., Appellant.**

**No. C5–86–1142.**

Court of Appeals of Minnesota.

March 17, 1987.

Review Denied May 18, 1987.

Kenneth D. Butler, David R. Michelson, Duluth, for respondent, Northwest Petroleum Ass'n.

Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for respondent, Minnesota Dept. of Economic Security.

Susan Ginsburg, Duluth, for appellant.

Heard, considered and decided by CRIPPEN, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from an order granting respondent Northwest Petroleum Association (Association) a permanent injunction enjoining the appellant Duluth Community Action Program, Inc. (Duluth CAP) from expending federal Low Income Energy Assistance Program (LIEAP) funds for the appellant's proposed Fair Share Fuel program. The district court concluded that the bidding process was improper because there was insufficient time for proper responses from bidders and because the competitive bidding process was not followed. The court also concluded that the single bidder was not a proper party to make a bid and that the administrative fee included in the proposed Fair Share Fuel program specifications violated federal LIEAP funding requirements. We affirm.

## FACTS

Minnesota receives federal funds under the Low Income Energy Assistance Program to help low income families with energy and heating-related expenses. Those funds are funneled through the Minnesota Department of Jobs and Training to local

energy assistance agencies which in turn channel the funds to eligible recipients.

The Duluth CAP is a private, nonprofit corporation which administers the Energy Assistance and Weatherization programs for the City of Duluth. In 1985, the Duluth CAP attempted to devise a means for increasing the purchasing power of LIEAP funds and developed a proposed Fair Share Fuel program under which home heating oil dealers would purchase heating oil in bulk and sell the oil to participating homeowners at a reduced price. The program envisioned that the price of the oil to the recipients would be based on a published wholesale indicator, a dealer's specified markup, and a one to three cents per gallon fee to cover Duluth CAP's marketing and outreach costs. In August 1985, the assistant director of the Duluth CAP sent a letter to Duluth area oil dealers which outlined the agency's proposed plan to solicit discounted prices for fuel oil.

An Invitation to Bid, soliciting dealers' bids for bulk purchases of heating fuel, was sent on or about September 24, 1985; the deadline for submitting bids was noon, October 4, 1985. The bid invitation was sent to a number of heating oil dealers already listed as vendors participating in the Duluth CAP's Energy Assistance program and stated:

> Each company wishing to submit a bid must be a *full-service company* offering 30–day billing with automatic delivery, budget payment plans and 24–hour emergency services. In addition, each company must have complete insurance coverage.
>
> * * * Each bid will be evaluated in terms of price, service, reputation and ability to deliver to the number of anticipated customers participating this Fall.

(emphasis added).

Although the bid invitation was not otherwise advertised or published publicly, it was sent to the Fond du Lac Indian Reservation at the request of a business development consultant working for the Reservation. The consultant found out about the proposed program and the bid invitation through his conversations with Duluth CAP's assistant director with whom the consultant previously had worked. The consultant frequently visited the Duluth CAP offices for business-related purposes, was a personal acquaintance of the Duluth CAP employee, and saw the employee frequently on a social basis. The assistant director provided the consultant with assistance and information which also was available to other potential bidders. The consultant did not know the specific details of the bid invitation before he received the invitation from the Reservation, although he knew of the invitation prior to the September 24 letter.

Although the Fond du Lac Reservation owned no delivery trucks and was not a dealer of home heating oil, its bid was based on the consultant's and the tribal council's estimation of the Reservation's "capability" to deliver home heating oil. The bid was developed around a purported subcontract between the Reservation and Peterson Oil & Septic Company of Duluth. The subcontract was signed by Larry Peterson, who is one-third owner of the Peterson Oil & Septic Company. His authority to enter the subcontract on behalf of the oil company was questionable.

The Fond du Lac bid response indicated there were 600 current customers and four delivery trucks available. In fact, the 600 customers were Peterson Oil customers and the tank trucks belonged to the oil company. In addition to the Reservation's own $200,000 line of credit, the bid included Peterson Oil's $35,000 line of credit with its fuel supplier. The Fond du Lac bid listed five Peterson Oil customers as references and indicated that the Reservation was "subcontracting the service storage and delivery of fuel oil to an existing fuel oil vendor." The Reservation did have its own bookkeeping and accounting capabilities.

The majority stockholder and president of Peterson Oil & Septic Company testified that he previously indicated to Mr. Peterson that their company was not interested in participating in the proposed Fair Share Fuel program, that he was not advised of

the deal, that he had no knowledge of the subcontract until a few days before the trial, and that he had not authorized or discussed the agreement between his company and the Reservation. He also testified that his company did not have the equipment or financial resources to act as a subcontractor for the Fond du Lac Reservation. The oil company president stated that he had not seen the bid submitted to Duluth CAP naming Peterson Oil as a subcontractor. He also stated that he did not give anyone authority to use Peterson Oil customers as references in the bid response and that his oil company would not be interested in providing subcontract services to the Fond du Lac Reservation.

Fond du Lac was the only entity to submit a bid for home heating oil services under the proposed Fair Share Fuel program; no heating oil dealer submitted a bid.

The Northwest Petroleum Association is an organization of petroleum jobbers in Minnesota. Shortly after the bidding deadline, the Association challenged the legality of the proposed Fair Share Fuel program and the circumstances surrounding the bidding process. The Association contended the one to three cents fee payable to Duluth CAP under the proposed program violated federal law because the fee constituted an administrative expense in excess of allowable administrative costs. The Association also contended that Fond du Lac Reservation was not a proper bidder under the published specifications because the Reservation was not a home heating fuel dealer. The Association sought and obtained an order temporarily enjoining Duluth CAP and the Minnesota Department of Jobs and Training from soliciting customers of Northwest Petroleum Association members and from setting up an energy program agency that would compete with private fuel oil jobbers.

The district court subsequently conducted a hearing to determine the substantive issues and consider the Association's request for a permanent injunction barring Duluth CAP from implementing its Fair Share Fuel program. The district court found that the Fond du Lac Reservation was the only bidder and that the Reservation was "claiming a subcontract with an oil company that could not perform in its existing capacity as of the date of bidding." The court also found that the proposed Fair Share Fuel program would "guarantee" a certain number of participants to the successful bidder, that those participants would "come from the customers of the [Association]," and that the customer transfers would cause irreparable harm to the Association members. Finally, the district court found that none of the funds received under the Low Income Energy Assistance Program should be diverted to pay administrative expenses of the Duluth CAP or the Reservation. The district court concluded that the bidding process was conducted improperly because there was insufficient time to allow a proper response and the competitive bidding procedures were not followed. The court also concluded the Reservation was not a proper party to make a bid because it did not meet the bid requirements.

The district court permanently enjoined the Duluth CAP from awarding any contract under the bid invitation of September 24, 1985, and from disbursing low income energy assistance funds to the Fair Share Fuel Program. Duluth CAP appeals raising four issues.

## ISSUES

1. Did the district court err by enjoining Duluth CAP from awarding the bid to the Fond du Lac Reservation according to the terms of the September 24, 1985, bid invitation?

2. Did the district court err by concluding that the Duluth CAP was required to adhere to its competitive bidding procedures?

3. Did the district court err by concluding that the administrative fee included in the proposed Fair Share Fuel program violates federal law?

4. Did the district court err by concluding that members of the Northwest Petro-

leum Association will suffer irreparable injury if the proposed Fair Share Fuel program is implemented?

## ANALYSIS

■ In reviewing this case on appeal, we must determine whether the trial court abused its discretion in awarding equitable relief. *See City of Cloquet v. Cloquet Sand and Gravel, Inc.*, 312 Minn. 277, 279, 251 N.W.2d 642, 644 (1977) (citing *Holmberg v. Bergin*, 285 Minn. 250, 172 N.W.2d 739 (1969)). A trial court may exercise sound discretion in granting injunctive relief and "its action will not be disturbed on appeal unless, based upon the whole record, it appears that there has been an abuse of such discretion." *Cherne Industrial, Inc. v. Grounds & Associates, Inc.*, 278 N.W.2d 81, 91 (Minn.1979) (citing *AMF Pinspotters, Inc. v. Harkins Bowling, Inc.*, 260 Minn. 499, 504, 110 N.W.2d 348, 351 (1961)).

### 1. Permanent Injunction Barring Bid Award

Appellant Duluth CAP contends the district court erred by enjoining it from awarding the bid to the Fond du Lac Reservation. Duluth CAP argues that the Reservation was a qualified bidder under the criteria published in the September 24, 1985, bid invitation because the Reservation had the "capacity" to deliver home heating fuel and perform the clerical functions necessary to maintain the proposed Fair Share Fuel program. Duluth CAP contends the Reservation was able to perform because it had a subcontract with Peterson Oil & Septic Company.

There is some dispute about whether Mr. Peterson could sign a contract for the Peterson Oil Company. However, testimony indicated that the corporation's bylaws required the president to sign all contracts. The president did not sign the subcontract with the Fond du Lac Reservation which was negotiated and signed without his knowledge. Appellant argues that Mr. Peterson would purchase the additional trucks and otherwise provide for the delivery of heating fuel. However, the subcontract ostensibly was with Peterson Oil, and testimony by Reservation officials indicates that they believed they had subcontracted with the Peterson Oil Company rather than Mr. Peterson personally.

■ We believe the trial court did not err by concluding that Fond du Lac was "claiming a subcontract with an oil company that could not perform in its existing capacity as of the date of bidding." The Duluth CAP's Invitation to Bid stated that "[e]ach *company* wishing to submit a bid *must* be a *full-service company* offering 30–day billing with automatic delivery." The Fond du Lac Reservation was not a "dealer," a "firm," or a "company" capable of delivering oil at the time it submitted the bid. The district court could conclude that the Fond du Lac Reservation was not a proper bidder under the published specifications and should not be awarded the bid under the terms of the September 24 bid invitation.

### 2. Competitive Bidding

The district court concluded that the bid invitation was not conducted properly because the invitation did not allow sufficient time for proper responses and because the bidding process was improperly influenced by the Fond du Lac consultant who was a social acquaintance and next door neighbor of the Duluth CAP employee responsible for the proposed Fair Share Fuel Program.

The Duluth CAP argues that, as a private nonprofit entity, it is not required to adopt competitive bidding procedures. However, the supreme court has suggested that, even if an entity is not required to use a competitive bidding process, once a competitive bidding process has been adopted, the procedure should be followed "in a manner reasonably designed to accomplish its normal purpose of giving all contractors an equal opportunity to bid and of assuring to the taxpayers the best bargain for the least money." *Griswold v. Ramsey County*, 242 Minn. 529, 535, 65 N.W.2d 647, 652 (1954) (footnote omitted). In *Asch v. Housing and Redevelopment Authority*, 256

Minn. 146, 97 N.W.2d 656 (1959), the court noted that factors other than financial return may be relevant in determining whether competitive bidding procedures must be followed. The Housing and Redevelopment Authority in *Asch* was not required to, but did solicit competitive bids.

Under the facts and circumstances of the instant case we are of the opinion that this rule [stated in *Griswold*] is not applicable where the municipal corporation is not buying goods and services under predetermined specifications, but where it is selling and is concerned with other factors in addition to monetary returns. We do not mean to preclude the requisite adherence to competitive bidding procedure in all cases where voluntarily assumed, and where the transaction involves a sale since it is conceivable that under some of these transactions the primary concern may be the amount of monetary return to the municipality.

*Id.* at 155, 97 N.W.2d at 664.

■ While the underlying purposes of the proposed Fair Share Fuel program are laudable and it appears the Duluth CAP is not subject to the state's municipal contracting statute, *see* Minn. Stat. § 471.345 (1984), we do not believe the trial court erred by concluding that once the Duluth CAP voluntarily adopted a competitive bidding process, the agency should adhere to that process and award the contract to an entity which qualifies under the published specifications.

### 3. Administrative Fee

The district court concluded that the one to three cents fee for each gallon of fuel sold through the proposed Fair Share Fuel program was "a mandatory fee or 'kickback'" to the Duluth CAP and constituted an administrative expense in excess of allowable administrative fees under federal law. The bid invitation and testimony of Duluth CAP's assistant director indicate that the fee will cover administrative costs.

■ The Duluth CAP argues that the per gallon fee is an allowable administrative fee because the fee is paid from dealers' funds. The Duluth CAP also contends

that once LIEAP funds are paid to the dealer they lose their status as LIEAP funds. We believe those arguments lack merit for two reasons.

First, vendors now receive LIEAP funds from the Duluth CAP against which current Energy Assistance recipients' oil purchases are billed. Oil dealers are obligated to refund unexpended grant funds to the Duluth CAP. Therefore, we are not persuaded that the fees will be paid by dealers or that the funds lose their status as LIEAP Funds. Second, according to the Invitation to Bid, dealers will not pay the fee *unless* the dealers participate in the Fair Share Fuel program. In addition, the Invitation to Bid states:

> The total cost to Fair Share Fuel *customers* would be wholesale cost, plus dealer mark-up *and the marketing fee to CAP.*

(emphasis added). Despite the fungible nature of LIEAP/Fair Share Fuel funds in the hands of the dealers once the dealers receive the funds and deposit them in their accounts, it is logical to conclude that at least a portion of the LIEAP funds funneled through the Fair Share Fuel program would be used for program administrative expenses. The Invitation to Bid expressly states that the fee is one of three components constituting the price of fuel oil charged by participating dealers. But for the Fair Share Fuel program there would be no "marketing" fee paid to the Duluth CAP.

An employee of the Minnesota Department of Jobs and Training who is responsible for monitoring state programs using LIEAP funds testified that he believed the proposed Duluth CAP program does not violate federal guidelines. The administrative guidelines provide that certain types of funds realized from use of federal funds need not be accounted for by grantees, including income from "service fees." However, the guidelines expressly provide that contrary statutory policies and standards "shall govern." *See* OMB Circular A-110 (July 1, 1976), Appendix I. Moreover, federal statute provides that only a specified percentage of LIEAP funds may be used for funding administrative costs associated with the LIEAP program.

(A) the State may use for planning and administering the use of funds available under this subchapter *an amount not to exceed 10 percent of its allotment* under this subchapter for a fiscal year; and;

(B) the State will pay from non-Federal sources the remaining costs of planning and administering the program assisted under this subchapter and will not use Federal funds for such remaining costs; * * *.

42 U.S.C. § 8624(b)(9) (1982) (emphasis added). The record does not indicate that the Secretary of Health and Human Services has waived any requirement in subsection (b) which might allow the State of Minnesota and its subgrantees to exceed the ten percent limitation on administrative expenditures. *See* 42 U.S.C. § 8624(d) (the Secretary may waive certain requirements stated in subsection (b)).

Based upon our review of the record and the applicable federal statutory law, we conclude that the trial court was correct in ruling that the marketing fee payable to the Duluth CAP from the Fair Share Fuel dealers is an impermissible use of LIEAP funds to the extent that the Duluth CAP has expended other funds already allocated for administrative expenses under the Duluth CAP budget and the State's own state plan for LIEAP funds previously approved by the federal government.

### 4. Irreparable Harm

The district court found that the participants "guaranteed" under the' proposed Fair Share Fuel program would come from customers of the Association's members and that this transfer of customers would cause irreparable harm to members of the Association. The president of the Association filed an affidavit during the temporary injunction proceedings stating that he believed vendors might lose oil heating clients, might have to terminate employees, and may be forced to sell equipment if the dealers lose a portion of their client base. The Association president also stated that he believed the proposed Fair Share Fuel program would result in jobbers having contracts they cannot fulfill because of damage to their customer base. However, the record indicates that customer "contracts" largely are nonexistent or very short-term and easily terminated, and that dealers still could provide heating fuel under the proposed program.

■ While we do not necessarily agree with the trial court's finding on irreparable harm because we believe the record does not show that the Association made a "positive showing" of "real and substantial" injuries, *see AMF Pinspotters, Inc. v. Harkins Bowling, Inc.*, 260 Minn. 499, 504, 110 N.W.2d 348, 351–52 (1961), we defer to the trial court's finding of fact on this issue.[1] Accordingly, we conclude that on the specific facts of this case the district court did not err by enjoining the Duluth CAP from awarding a contract to implement its proposed Fair Share Fuel program based on the specifications stated in the September 24, 1985, bid invitation.[2]

### DECISION

The trial court did not err by enjoining the Duluth CAP from awarding the bid to

---

1. We assume the trial court considered the standing issue in reviewing the validity of the Fair Share Fuel program as proposed under the September 24, 1985 bid invitation. Such consideration would be proper because the "injury in fact" test requires a plaintiff to have a legitimate and protectible interest at stake in the litigation. *See Snyder's Drug Stores, Inc. v. Minnesota State Board of Pharmacy*, 301 Minn. 28, 32, 221 N.W.2d 162, 165 (1974); *see also Arens v. Village of Rogers*, 240 Minn. 386, 61 N.W.2d 508 (1953), *dismissed*, 347 U.S. 949, 74 S.Ct. 680, 98 L.Ed. 1096 (1954) (former liquor licensees and taxpayers could challenge actions and expenditures by a village which established an exclusive municipal liquor store under statutory authorization). Here the test appears to be met because federal funds now paid to Association members under current fuel assistance programs may be diverted from the members and expended instead in a program the trial court found involved improper practices.

2. Our decision is confined only to the implementation of the proposed Fair Share Fuel program under the specifications stated in the September 24, 1985, bid invitation. We do not speculate whether the Association's alleged injuries would be sufficient to support a permanent injunction under other circumstances.

the Fond du Lac Reservation because the Reservation was not a qualified bidder and because the Duluth CAP did not award the bid under the agency's published competitive bidding procedures. The trial court also did not err by ruling that the one to three cents fee violated federal law because the fee represents an administrative expenditure in excess of federal statutory limitations.

Affirmed.

LANSING, Judge (dissenting).

I cannot agree. The majority opinion perpetuates an unjust result by failing to properly address three fatal deficiencies in the litigation.

First, Northwest Petroleum does not have standing to contest the bidding process, Fond du Lac's qualifications as a bidder, or the alleged excesses in the administrative fee. No heating oil dealer directly submitted a bid or wanted to submit a bid. The standing issue should not be ignored by citing inapposite authority for requirements of a taxpayer's suit.

Second, it is unfair to invalidate this attempt to extend the buying power of low-income heating assistance by finding violations of a bidding process which CAP was not required to follow in the first place. I cannot agree that *Asch v. Housing & Redevelopment Authority of St. Paul,* 256 Minn. 146, 97 N.W.2d 656 (1959), requires or supports such a holding.

Third, there has been no showing of irreparable harm which would warrant an injunction. If Northwest Petroleum has *any* compensable claim, it is reducible to money damages. Northwest Petroleum's claim of economic detriment is prematurely injected into the bidding process. *See Carlson-Lang Realty Company v. City of Windom,* 307 Minn. 368, 374, 240 N.W.2d 517, 521 (1976).

The federal LIEAP legislation appropriating funds was designed to benefit low-income persons by providing them with the ability to obtain adequate heat during Minnesota winters. Northwest Petroleum's standing and injunction seems to be prem- ised on an idea that these federal expenditures were intended to benefit oil companies, which of course they were not.