**SCHWANDT SANITATION OF PAYNESVILLE, Appellant,**

v.

**CITY OF PAYNESVILLE, West Central Sanitation, Inc., intervenor, Respondents.**

No. C7–87–1346.

Court of Appeals of Minnesota.

April 19, 1988.

Paul R. Haik, Eric J. Magnuson, Rider, Bennett, Egan & Arundel, Minneapolis, for Schwandt Sanitation of Paynesville.

William L. Spooner, Frauenshuh and Spooner, P.A., Paynesville, for City of Paynesville.

Boyd A. Beccue, Willmar, for West Central Sanitation.

Heard, considered and decided by FOLEY, P.J., and NORTON and MULALLY *, JJ.

## OPINION

FOLEY, Judge.

Schwandt Sanitation of Paynesville hauled refuse for the city of Paynesville under a contract. As the contract term drew to a close, Paynesville offered to extend the contract for another year. While Schwandt was unwilling to sign the extension contract, Schwandt continued hauling refuse for Paynesville.

Paynesville then solicited bids for its refuse hauling. The contract was awarded to the lowest bidder, West Central Sanitation, Inc. Schwandt commenced action against Paynesville alleging breach of contract, violation of open meeting and competitive bidding laws, and violation of Schwandt's procedural due process rights. The trial court found in favor of both

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Paynesville and West Central, awarding them damages and attorney fees pursuant to Minn.Stat. § 549.21 (1986). We affirm in part and reverse in part.

## FACTS

Schwandt, a sole proprietorship owned by David and Diane Schwandt, is a refuse hauling business. In 1979, Schwandt entered into a series of contracts to haul refuse for Paynesville. The last written contract between these two parties was for the calendar year 1985.

On December 18, 1985 at its regular meeting, the Paynesville council unanimously agreed to an extension of Schwandt's contract. Schwandt declined to sign the contract because it was concerned about a possible increase in dumping charges at the Paynesville landfill. However, Schwandt continued to haul refuse for Paynesville according to the terms set forth in the unsigned contract extension agreement.

At the May 14, 1986 city council meeting, Schwandt asked Paynesville for a rate increase of $1 per month per household (from $6.50 to $7.50). However, Schwandt was still unwilling to sign the extension contract because it did not want to be bound by a set price term. The council approved the rate increase effective June 1, 1986 through September 1, 1986. At this same meeting, the mayor suggested the refuse contract should be put out for bids.

On August 12, 1986, an advertisement appeared in the Paynesville, St. Cloud and Willmar newspapers requesting bids for the weekly hauling of refuse for Paynesville. No vote had been taken by the council as to whether Paynesville should solicit bids, yet the city clerk prepared and ran this bid advertisement. Schwandt saw this ad.

On August 13, 1986, at its regular meeting, the city council discussed the refuse hauling bids. A bid advertisement and bid proposal form were subsequently prepared by the city attorney. This bid advertisement was published in the Paynesville, St. Cloud and Willmar newspapers on August 19 and 26. This advertisement called for

sealed bids, required the bidder to honor its bid for at least 30 days, required each bid to be accompanied by letters of recommendation or other evidence of the fiscal responsibility of the bidder, required submission of all bids by 7:30 p.m. on August 27, 1986, and reserved to Paynesville the right to waive irregularities and informalities in the bidding process.

The bid proposal form prepared by the city attorney was delivered to the city clerk for distribution. This form required a bid for services over a two-year period and provided for two alternative bids: one where the bidder did the billing for services; and the other where Paynesville continued doing the billing. The proposal form contained a senior citizens' program provision and further provided:

Each customer will be allowed # ___ of containers per collection. In the even that the customer exceeds the container limit, the charge will be $___ per container for extra hauling.

No container size was asked for in the bids as the bids were to be in compliance with a Paynesville ordinance which stipulated a maximum container size of 30 gallons.

Doty's Sanitation, Schwandt and West Central submitted bids to Paynesville by the August 27, 1986, 7:30 p.m. deadline. A fourth bid was submitted but was not considered because it was late. West Central's bid was the lowest, calling for the pickup of four containers per collection at $6.40 per customer per month with Paynesville doing the billing or $6.75 per customer per month if West Central did the billing; $1 per bag for senior citizens; and $.75 per container for extra hauling exceeding the container limit. West Central also furnished a letter from its bank regarding West Central's fiscal responsibility, and several letters of recommendation.

Doty's bid was the next lowest calling for three 30–gallon containers per collection at $7.40 per customer per month with Paynesville doing the billing and no provision for Doty doing the billing indicated; $1.25 per bag for senior citizens and $.50 per container for extra hauling. A letter

of recommendation accompanied Doty's bid.

Schwandt's bid was the highest, calling for three 30–gallon containers per collection at $7.50 per customer per month with Paynesville doing the billing or $8.50 per customer per month if Schwandt did the billing; $1 per bag for senior citizens; and $.25 per container for extra hauling. Four pages of signatures of satisfied customers, a statement of Schwandt's membership in the solid waste management association, and a statement indicating Schwandt's financial support of local businesses accompanied its bid.

The mayor reviewed the bids and stated no decision would be made on them until the September 10, 1986 city council meeting. However, a discussion on the bids ensued concerning which landfill West Central might use, whether Paynesville or the hauler should do the billing, the commencement date of the contract, and the size specifications of the containers in West Central's bid. The mayor appeared ready to award the bid to West Central but was reminded the bidders were told no decision would be made until the next city council meeting. In addition, several members of the council had questions on West Central's bid and were concerned about giving the bid to an outside firm. Some of the members decided to clear up their questions with West Central before the next meeting. No decision on the bid was made.

On August 29, 1986, Cecil Louis, a city council member, met with Donald Williamson of West Central and discussed West Central and its garbage hauling business. No other bidders were informed of the meeting between Louis and Williamson, but Louis did report back to the city council as to the results of this meeting.

On September 10, 1986 the city council met and discussed the refuse hauling bids. All three of the bidders were present. The possibility of a rate increase should landfill costs rise was discussed. One of the councilmen stated that the bid was intended to be for two years at a fixed rate. Doty and Schwandt acknowledged they knew this at the time they made their bids. West Central was not clear on this issue but agreed to abide by the fixed rate for a two-year term. West Central was questioned on the size of the containers for its bid and answered that its bid called for four containers up to a 90–gallon maximum. West Central stated its bid was for the same maximum capacity as the other two bids.

The council then decided Paynesville would continue to handle the billing. All bidders were asked if they would like to withdraw their bids. No bidder withdrew. A motion was made to accept West Central's low bid if West Central agreed to have Paynesville do the billing. It was made clear the motion would be withdrawn if West Central did not agree to this billing procedure. West Central agreed. The motion was made and the contract was awarded to West Central.

On September 25, 1986, Schwandt served the complaint in the present action on Paynesville. On September 30, 1986, Paynesville sent Schwandt a letter giving him a month's notice of termination for the service of hauling refuse for Paynesville.

On October 31, 1986, Schwandt brought a motion for a temporary restraining order prohibiting Paynesville from awarding the contract to West Central and further prohibiting Paynesville from interfering with its contract with Schwandt. On November 6, 1986, the trial court granted this motion on condition Schwandt post a $17,000 bond. This order expired by its own terms on December 31, 1986.

## ISSUES

1. Did the refuse hauling contract require compliance with competitive bidding procedures of Minn.Stat. § 412.311 (1986)?

2. Was the trial court's finding that Paynesville did not permit West Central to make a change in its bid clearly erroneous?

3. Was Schwandt deprived of a property interest without due process of law?

4. Did the trial court err in finding there was no valid contract between Schwandt and Paynesville?

5. Did the trial court err in awarding Paynesville and West Central attorney fees

pursuant to Minn.Stat. § 549.21, subd. 2 (1986)?

## ANALYSIS

■ 1. In *Griswold v. Ramsey County*, 242 Minn. 529, 65 N.W.2d 647 (1954), the Minnesota Supreme Court held where a governmental unit advertises for competitive bids, it may not later alter its procedure making it non-competitive in nature. The *Griswold* court stated:

> Here the county board, although not required by statute to do so, commendably adopted the method of advertising for competitive bids as a preliminary to the letting of the contract for the construction of the jail. It follows however that, having once adopted the competitive bidding method, the county board was required, as long as that method had not been seasonably abandoned, to *pursue such method in a manner reasonably designed to accomplish its normal purpose of giving all contractors an equal opportunity to bid and of assuring to the taxpayers the best bargain for the least money.*

*Id.* at 535, 65 N.W.2d at 652 (emphasis added). *Griswold* makes it clear the competitive bidding method undertaken by the city cannot be arbitrary, capricious, or unreasonable but must follow the standards the city has set out. *Id.* 65 N.W.2d at 651–50. In reviewing the question of whether the process was arbitrary, capricious or unreasonable, the court focuses on whether the contractors were given an equal opportunity to bid and whether the process gave the taxpayers the best bargain for their money. *Id.*

■ Paynesville, on three separate occasions in three different newspapers, gave notice to potential bidders it would be awarding a city refuse hauling contract. The first notice published on August 12, 1986 did not call for sealed bids or require any recommendations of fiscal responsibility. However, each of the next two notices called for sealed bids, letters of recommendation of fiscal responsibility, and expressly stated the bids were due at 7:30 p.m. on August 27, 1986. Schwandt saw these no-

tices, knew when the bid was due and what was required in each bid. In fact, Schwandt knew on May 14, 1986 that Paynesville would be letting this bid in the near future. Yet, Schwandt contends he assumed the competitive bidding procedures as set forth in Minn.Stat. §§ 471.345, subd. 3 and 412.311 (1986) would be followed.

> Minn.Stat. § 471.345, subd. 3 requires:
> If the amount of the contract is estimated to exceed $15,000, sealed bids shall be solicited by public notice in the manner and subject to the requirements of the law governing contracts by the particular municipality or class * * *.

Paynesville did call for sealed bids but Schwandt's argument that once competitive bidding is begun the procedures set forth in Minn.Stat. § 412.311 must be followed is without merit. Minn.Stat. § 412.311 requires that

> the contract shall be let to the lowest responsible bidder, after notice has been published once in the official newspaper at least ten days in advance of the last day for the submission of bids.

However, this statute does not apply to refuse hauling contracts. *See, e.g.,* Op. Atty.Gen., 707a–15, Dec. 23, 1977 (This section applies to contracts for the purchase of merchandise, materials or equipment or for any kind of construction work undertaken by a city and is *inapplicable* to a contract for refuse collection and hauling services.) Therefore, appellant's argument this 10–day notice requirement needed to be followed is without merit.

Schwandt relies on *Northwest Petroleum Association v. Minnesota Department of Economic Security*, 402 N.W.2d 591 (Minn.Ct.App.1987), for the proposition that once a competitive bidding procedure has been adopted, an entity is bound to follow it if the process has been started. However, in *Northwest Petroleum* it is clear the bid letting authority was not being required to comply with statutory bid letting procedures but was being required to follow its own advertised process. *Id.* at 596.

■ In this case, Paynesville did follow its advertised procedures. It called for bids accompanied by letters of fiscal responsibility or recommendation to be submitted no later than August 27, 1986 at 7:30 p.m. This allowed potential bidders an equal opportunity to get their bids in on time. Paynesville did not award the contract in an arbitrary, capricious and unreasonable manner after it had opened the bids. It awarded the contract to the lowest qualified bidder in accordance with its advertisement thereby giving the Paynesville taxpayers the best value for the money.

2. Schwandt contends West Central was allowed to materially change its bid after the bids were opened. Schwandt alleges Williamson modified the gallon limitation of his bid to his advantage after he had seen the bids of his competitors. Schwandt asserts West Central was permitted to negotiate a prorated increase in its bid in the event landfill costs increased. Schwandt argues West Central was also given the opportunity to make a choice as to whether it wished to do the billing or allow Paynesville to do so. Finally, Schwandt asserts the contract between Paynesville and West Central alters the bid by failing to deduct a $.25 billing charge per customer from the $6.40 per customer per month bid submitted by West Central.

> Minnesota case law is clear:
> [N]o material change may be made in any bid after the bids have been received and opened since to permit such change would be to open the door to fraud and collusion. As a corollary thereto, * * * no material change in contract terms may be made *after* the contract has been let to the lowest bidder.

*Griswold,* 242 Minn. at 536, 65 N.W.2d at 652 (emphasis added); *see also Telephone Associates, Inc. v. St. Louis County Board,* 364 N.W.2d 378, 381 (Minn.1985); *Coller v. City of St. Paul,* 223 Minn. 376, 387, 26 N.W.2d 835, 841 (1947).

■ West Central was not allowed to change its bid on the capacity limitation of the containers. The bid form required the bidder to supply the number of containers not the size of the containers. The bids were to comply with Paynesville ordinance which stipulated a 30 gallon limit on the size of the containers. When questioned before the bid was let as to what its bid meant, West Central did say it meant a combination of 20 and 30 gallon containers up to a 90 gallon limit. West Central stated its bid was the same as the other bids. After reading the full file, this court finds this to be a clarification of West Central's bid rather than a change to West Central's advantage after the bids were let.

Next, West Central was not permitted to negotiate a prorated increase in the event that landfill costs increased. Noting the Schwandt and Doty bids to be firm, Paynesville acted to force West Central to abide by the terms of the original bid, all to the benefit of Paynesville and its taxpayers.

There is also no merit to Schwandt's argument West Central was given the opportunity to make a choice as to who would do the billing. The bid form called for two contract quotations, one where Paynesville did the billing and the other where the bidder would do the billing. After the decision was made that Paynesville would do the billing, all three bidders were given the opportunity to withdraw their bids. Later, a motion was made to accept West Central's bid provided Paynesville continued to do the billing. As the councilman stated: "If that is not acceptable to West Central Sanitation, then I withdraw that motion." West Central was not given a choice; it was given an ultimatum. If it did not agree to Paynesville doing the billing, it would not have been awarded the contract.

The written bid submitted by West Central was for $6.40 per customer per month if Paynesville did the billing. Schwandt contends the bid price was in reality $6.15 per month. Schwandt asserts Paynesville's attorney drafted a contract conforming to this understanding, but West Central refused to sign it until the surcharge was deleted.

■ The bid proposal form is silent about deducting any charge if Paynesville does the billing. The city attorney testified the original contract with West Central erroneously included a $.25 deduction for

Paynesville's handling of the billing. This testimony further showed the agreement which West Central refused to sign was drawn using an old contract as a guide rather than conforming the new contract to the agreement as defined by the bid proposal form. Therefore, the deletion of the language calling for a $.25 deduction does not modify the contract but conforms the terms of the contract to the plain meaning of the bid proposal form.

3. Schwandt argues it was denied its procedural due process rights in violation of 42 U.S.C. § 1983 (1985) because Paynesville discussed the bids at the August 27, 1986 meeting after stating no decision would be reached until the September 10, 1986 meeting; unrecorded deliberations were made regarding West Central's service; Louis spoke ex parte with West Central about the plans for refuse hauling; and when the bid was let neither Schwandt nor Doty were aware that any ex parte discussions had taken place. Relying on *L & H Sanitation, Inc. v. Lake City Sanitation, Inc.,* 769 F.2d 517 (8th Cir.1985), Schwandt asserts a lowest responsible bidder in a competitive bidding situation has a property interest protected by the procedural due process guarantees of the constitution supporting a § 1983 claim for violation of that right through invalid bidding procedures.

In analyzing a procedural due process claim, the court must first determine whether the plaintiff has a protected property or liberty interest. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). In *L & H Sanitation,* the court held:

> [U]nder [state] law governing competitive bidding on public contracts, the lowest responsible bidder in compliance with the bidding specifications and procedures has a legitimate expectation in being awarded the contract once the governmental body makes a decision to award the contract * * *.

*Id.* 769 F.2d at 523.

Schwandt argues it has a protected property interest because West Central's bid

did not conform to the competitive bidding requirements and Schwandt's bid was the next lowest. However, West Central's bid did conform to the bidding requirements. In fact, West Central was the only bidder who furnished Paynesville with "letters of recommendation or other evidence of the fiscal responsibility of Bidder and his capacity of performing the proposed work in a format selected by the Bid" as was required by the August 19 and 26 advertisements.

In addition Schwandt's contention it was the next lowest bidder after West Central is suspect at best. Schwandt contends its bid was lower than Doty's or at least equal to Doty's. Schwandt admits Doty's bid was $.10 lower per customer but contends Schwandt's bid as to both senior citizens and excess containers was $.25 better than Doty's. Schwandt contends at the very worst Schwandt's bid was so close to Doty's that both had a protectable interest in the bidding process.

Schwandt's argument is persuasive but no data was supplied to show that this premise is correct. Without this information, it is not clear that Schwandt was the next lowest bidder. Also Doty's bid applied its $7.40 limit to both residential and commercial collection whereas Schwandt's bid applied only to residential collection.

As Schwandt has no protected property interest by which it can sustain a procedural due process claim, it is unnecessary to reach the other issues of which Schwandt complains.

4. Schwandt acknowledges it never signed the extension of the refuse hauling contract offered by Paynesville in December 1985. Schwandt admits it did not want to sign the extension of the contract because it did not want to be bound by its terms. However, Schwandt argues a contract existed because Schwandt continued to haul refuse for Paynesville and because Paynesville paid Schwandt according to the terms of the extension agreement. Despite asking Paynesville for a rate increase,

Schwandt argues the terms of this contract are those found in the extension agreement Schwandt refused to sign.

 An offeree may accept an offer for a contract by conduct which leaves the offeror reasonably to assume he assents and accepts the terms of the offer. *Holt v. Swenson*, 252 Minn. 510, 516, 90 N.W.2d 724, 728 (1958). The requisite mutual assent does not require a subjective mutual intent to agree on the same thing in the same sense, but may be based on objective manifestations where a party by his words, conduct, or both leads the other party to reasonably assume that he assents and accepts the terms of the others offer. *Id.*

 There is nothing in the facts to support Schwandt's position a valid contract on the terms as expressed in the extension agreement existed between Schwandt and Paynesville. There was no mutual assent. Schwandt refused to sign the agreement or to be bound by its terms. In May 1986 Schwandt, at a regularly scheduled city council meeting, asked for a rate increase. This rate increase was approved for the period running from May through September 1, 1986. In addition, after Schwandt asked for the price increase, the mayor immediately suggested the refuse hauling contract should then be put up for bids. Therefore, the strongest argument for Schwandt's position would be a valid contract existed between Schwandt and Paynesville from May 1986 through September 1, 1986, as both parties assented to this agreement. This contract then terminated and Paynesville employed Schwandt at will to haul its refuse. The fact Paynesville gave Schwandt a 30–day notice of termination does not mean Paynesville was acting pursuant to the old contract. Rather, it was giving Schwandt adequate notice that Paynesville was terminating Schwandt's services.

 5. Believing that Schwandt acted in bad faith in pursuing its claims, the trial court awarded attorney fees to Paynesville and West Central. The trial court viewed Schwandt's claims as partially frivolous and partially non-frivolous and attempted to prorate the fees accordingly.

The court also assessed the fees against the bond filed by Schwandt in support of the temporary restraining order granted by the court.

Minn.Stat. § 549.21, subd. 2 (1986) provides:

> Upon motion of a party, * * * the court in its discretion may award to that party costs, disbursements, reasonable attorney fees and witness fees if the party or attorney against whom costs, disbursements, reasonable attorney and witness fees are charged acted in bad faith; asserted a claim or defense that is frivolous * * *; asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass; or committed a fraud upon the court.

An award of fees under this statute can be upset only upon a finding of abuse of discretion by the trial court. *Valento v. Ulrich*, 402 N.W.2d 809, 814 (Minn.Ct.App. 1987). Fees may be awarded upon a finding that a complaint is unwarranted or unfounded. *Id.* When the record indicates no bad faith and when there are bona fide issues to decide, it is improper to award fees. *Application of Hofstad*, 376 N.W.2d 698, 702 (Minn.Ct.App.1985).

 We find the trial court abused its discretion in awarding attorney fees. After reviewing the record, we find Schwandt had a good faith belief that it had an action for breach of contract and also believed there were potential violations of the open meeting law and competitive bidding statutes.

 In addition, the trial court erroneously assessed the fees against the bond filed by Schwandt in support of the temporary restraining order granted by the court. To recover on an injunction bond the party seeking damages must establish that he suffered the damages proximately caused by the restraining order to which the other party was not entitled. *Electro–Craft Corp. v. Controlled Motion Inc.*, 370 N.W.2d 465, 466 (Minn.Ct.App.1985). Only when the sole purpose of the action is to secure a permanent injunction are attorney fees incurred in defending the main action

within the terms of the bond. *Pelkey v. National Surety Co.*, 143 Minn. 176, 178, 173 N.W. 435, 436 (1919). Otherwise, the temporary injunction is ancillary to the main action and attorney fees incurred in the latter are not recoverable in an action on the bond. *Electro–Craft*, 370 N.W.2d at 467.

The temporary restraining order expired by its own terms on December 31, 1986. Here, attorney fees incurred in defending the main action are incidental to the damages contemplated in the temporary injunction. Therefore, the trial court erred in assessing attorney fees against the bond.

### DECISION

The trial court did not err in not finding a breach of contract or violation of competitive bidding procedures or the open meeting law. The trial court did abuse its discretion in awarding attorney fees to Paynesville and West Central and in charging these fees against the bond filed to support the temporary injunction.

Affirmed in part and reversed in part.